##### IN THE

# SUPREME COURT OF JUDICATURE

##### OF THE

## STATE OF NEW-YORK,

IN OCTOBER TERM, 1835—IN THE SIXTIETH YEAR OF THE INDEPENDENCE
OF THE UNITED STATES.

---

### ALBANY DUTCH CHURCH vs. VEDDER and others.

The obligees of a bond given for the faithful discharge of the duties of a *treasurer* of a corporation, are under no legal obligation to watch over the conduct of their officer, to examine into his accounts at stated periods, and in case of default on the part of the officer, to adopt measures calculated to relieve his *sureties ;* all they are bound to do is to prosecute upon the request of the sureties. The fact that at the time of the giving of the bond there was a standing *by-law* of the corporation that the treasurer should *account* at the expiration of every *six months* does not help the sureties—such by-law being held to be a mere private regulation, forming no part of the contract with the sureties.

The *sureties* to such a bond are discharged, if without any reasonable excuse the *obligees neglect to prosecute after request,* where the party for whom the sureties are bound, subsequent to such request becomes *insolvent,* whereby the sureties are prejudiced.

In debt on bond for the performance of covenants, a breach is sufficient if assigned in the words of the covenant, although the plaintiff under it may be entitled to only nominal damages.

THE plaintiffs in this case declared in debt on a bond bearing date 15th February, 1826, in the penal sum of $5000, conditioned that Gerrit Gates should faithfully execute the duties of the office of treasurer of the Reformed Protestant Dutch

Church in the city of Albany; and should, whenever thereunto required, render a true and just account of all his receipts, expenditures and transactions in such office; that he would keep a separate account in the Bank of Albany, as such treasurer, of all monies received by him on account of the church; and would not draw out from such bank any monies otherwise than by his check as such treasurer, to satisfy demands allowed by the plaintiffs. The following breaches are assigned: 1. That Gates had not faithfully executed the duties of his office; that he had received as treasurer large sums of money for and on account of the plaintiffs, amounting to $10,000, and fraudulently appropriated the same to his own private use; and although required had refused to account; 2. That he had not kept a separate account as treasurer, in the Bank of Albany, of all monies, &c. but large sums, to wit, $10,000 received by him as treasurer, were never deposited by him in that bank; and 3. That he did by his check as treasurer draw out of the Bank of Albany $10,000 for purposes other than to satisfy demands allowed by the plaintiffs. The defendants *demurred* to the breach *secondly* assigned, and to the other breaches pleaded that on the 6th February, 1816, the plaintiffs being an ecclesiastical corporation, did in consistory pass a by-law and permanent regulation, that the treasurer of such corporation should, at the end of every six months during each year, render an account of his receipts and disbursements to the plaintiffs— which by-law and regulation was at the time of the execution of the bond declared on, in full force and effect, and still so remains. That notwithstanding the plaintiffs from 15th February, 1826, to 20th March, 1833, neglected to require Gates to account, and during all that time suffered him to remain and continue in the office of treasurer, after his repeated defaults from year to year, until he became and was and now is wholly insolvent, concluding with a verification and prayer of judgment. To this plea the *plaintiffs* demurred.

*J. Van Buren*, for the defendants, insisted that the *second breach* was badly assigned; that although in general it was sufficient to negative the covenant in the terms thereof, still

where the assignment thus framed gives no *data* from which damages can be ascertained, it is not enough. *The People* v. *Russell*, 4 *Wendell*, 574. The breach here is that Gates did not make deposits of the monies received by him as treasurer *in the Bank of Albany.* Suppose it should appear that he made his deposits in another bank in the same place, the solvency of which was unquestionable, what damages could the plaintiffs show? The counsel also insisted that the plea demurred to by the plaintiffs was good. The by-law of the corporation requiring the treasurer to account every six months should be considered as forming part of the contract between the plaintiffs and the sureties, and that the latter contracted in reference to it. If so, the gross *laches* of the plaintiffs in permitting Gates to continue in office, after repeated defaults from year to year, discharged the sureties. In *The People* v. *Jansen*, 7 *Johns. R.* 332, where the supervisors of a county, instead of discharging a county treasurer and prosecuting him for his first default, suffered him to continue in office after repeated defaults until he became insolvent, it was held that his *sureties* were discharged. Besides, the sureties here have a right to claim that they should be treated as *guarantors*, and if so there is no pretence for charging them.

*J. T. B. Van Vechten*, for plaintiffs. The plaintiffs had a right to require the deposit in any bank they saw fit to designate, and the sureties agreed that the deposit should be made in the Bank of Albany. The demurrer admits the covenant to be broken, and the plaintiffs are entitle to recover such damages as they can prove; at all events, they may claim *nominal damages.* The plea is bad; the by-law of the corporation forms no part of the contract, as it is not to be presumed that the sureties contracted in reference to it—it is a mere private regulation of the plaintiffs, with which the sureties have no concern. The only ground left the defendants is the *neglect to sue,* and of that they cannot avail themselves, as there is no pretence of a *request* to sue. The mere *laches* of the plaintiffs furnish no defence. The principle adopted by the court in *The People* v. *Jansen*, has been since overruled, 9 *Wheat.* 736; 11 *id.* 184; 12 *id.* 509; 1 *Peters*, 325, and 4 *Wendell*,

574. The plea is bad also, as it is no answer to the third breach, which charges a misappropriation of the monies of the plaintiffs; and it is defective in not specifying sums and dates as to the repeated defaults of Gates.

*Van Buren,* in reply, said that he would admit that mere neglect to sue, without request, would not discharge the sureties, but here was a neglect of duty. The plaintiffs were under a moral obligation to protect the sureties; and as to the overruling of the case of *The People* v. *Jansen,* it appeared to him that the reason assigned for the decisions in the court of the United States, viz. that *laches* were not imputable to the *government* for the neglect of its officers, did not apply to private corporations, who in law are considered as individuals.

*By the Court,* SAVAGE, Ch. J. The demurrers in this case raise two questions: 1. Upon the sufficiency of the second assignment of the breach in the declaration; and 2. Upon the sufficiency of the defendant's last plea, both in matter of substance and in form.

As to the second breach assigned in the plaintiff's declaration, the general rule no doubt is, that a breach is sufficient if assigned in the words of the covenant. 2 *Chit. Pl.* 325. 1 *Bos. & Pul.* 643. The words of the condition of the bond are, that Gerrit Gates shall "keep a separate account in the Bank of Albany, as such treasurer, of all monies received by him on account of said church." The assignment is "that the said Gerrit Gates did not keep a separate account in the Bank of Albany, as such treasurer, of all monies received by him on account of said church," but large sums of money, amounting to the sum of $10,000, received by him as treasurer, were never deposited, &c. This seems to be within the rule defining a good breach. There is no difficulty in assenting to the correctness of this rule when such general assignment *necessarily* amounts to a breach, as was said by Kent, chief justice, in *Smith* v. *Jansen,* 8 *Johns. R.* 114, where the breach was that a prisoner did not remain a true and faithful prisoner, according to the condition of a limit bond. There the fact of escaping, alone was a breach of the condition, and the extent

of liability was fixed by statute. Here the plaintiffs do not ALBANY, October, 1835. show that they have been damnified, nor do they furnish any data by which their damages may be assessed. Upon Albany Dutch Church v. Vedder. the assessment, it may appear that although Gerrit Gates did not keep a separate account in the Bank of Albany, that he had made his deposits in some other equally safe bank; in which case only nominal damages could be assessed upon the assignment. I am inclined, however, to think upon authority that the assignment is sufficient, although the plaintiffs would be entitled to recover only *nominal damages.* It seems to be well settled that it was not necessary to set forth the several sums of money received by Gerrit Gates, as such particularity would lead to too great prolixity. 2 *Saund.* 411, *n.* 4. 1 *Bos. & Pul.* 644. 5 *Johns. R.* 174.

The next point of inquiry is, whether the last plea of the defendants is good in substance and form. The substance is this: that the plaintiffs neglected to call their treasurer to account for seven years after his default from year to year, until he became insolvent, when by their own by-law he was bound to render his account every six months. The question is, does the negligence of the creditor to call his debtor to account discharge the sureties? As a general proposition, I know of no case which answers this question in the affirmative, but there are numerous cases which decide it in the negative. The case *The Trent Navigation Company* v. *Harley,* 10 *East,* 35, was much like the present. The condition of the bond upon which that suit was brought, was, that one Ella, who had been appointed collector of tolls for the company, should, so long as he should continue collector, render true accounts of all monies which he should receive or pay; and from time to time pay to their treasurer when required, all money which should come to his hands, and in all things faithfully execute the office of collector. On the trial, it appeared that from 1799 to 1807, Ella was a defaulter to £1000. He had attended the meeting of the committee who audited the books once a year; neither the treasurer nor the committee complained of any deficiency in the books till 1807, when it was communicated to the sureties. The treasurer might

have every year ascertained the balance, and there was no difficulty in detecting the errors when the accounts were settled. It was contended that the sureties were discharged, by suffering the collector to run so much in arrear, and by neglect to give the sureties notice; but that was ruled to be no defence at law. On a motion for a new trial, it was contended that the neglect of the officers of the company to detect errors in Ella's accounts, or their neglect to require him to account according to the condition of the bond, discharged the sureties; and it was argued that the sureties relied on the obligees using due diligence; and their omitting to do so for eight or nine years lulled the sureties into false security, and prevented them from using diligence for their own protection. The counsel for the plaintiffs were stopped by the court. Lord Ellenborough said the only question was whether the *laches* of the obligees, in not calling upon the principal so soon as they might have done, if the accounts had been properly examined from time to time, be an estoppel at law against the sureties? I know, said he, of no such estoppel *at law*, whatever remedy there may be in equity. Thompson, J. in giving the opinion of the court in *The People* v. *Jansen*, 7 *Johns. R.* 338, quotes this expression of Lord Ellenborough, and adds, that if the position intended to be laid down is, that mere delay in calling on the principal will not discharge the surety, it is, I think, a sound and salutary rule both at law and in equity. The case of *The People* v. *Jansen* was of course not supposed to trench upon that principle. The court expressly stated, that in ordinary cases the obligee is under no legal obligation to watch over the conduct of the principal debtor, and at stated periods to examine into his accounts, and in case of failure to adopt measures calculated to relieve the surety. But that case was put upon the statutes and the duties arising out of them, and also upon the peculiar circumstances of the case itself. The supervisors were bound, by the law under which the bond was taken, to examine the accounts of the loan officers annually, and if any one was found in default, it was the duty of the supervisors and judges to remove him and elect another in his stead. The court said the surety had a right to rely upon the fidelity of those officers in the performance of

their duty, and that the public should be chargeable with the consequences of their neglect. There is no such feature in this case. This is a transaction between individuals, for so a corporation is considered. The sureties had no reason to place any reliance upon the by-law requiring the treasurer to account every six months; that was a mere private regulation, which did not form any part of the contract with the sureties. The plaintiffs were not officers of the public, whose conduct was regulated in the transaction of their concerns by a public statute. The two cases are not parrellel. But even in the case of public officers, it has since been determined that the provisions of law which regulate the conduct of public officers, are created for the security and protection of government—are merely directory, and constitute no part of the contract with the surety. 9 *Wheat.* 736. 11 *id.* 184. 12 *id.* 509. 1 *Peters*, 325. 4 *Wend.* 574, 5. The utmost extent to which courts have gone in cases like the present, is to hold that when the creditor refuses to prosecute the principal debtor, upon the request of the surety, if the debtor subsequently becomes insolvent, and the surety is prejudiced by such refusal, he is discharged. 13 *Johns. R.* 174. 17 *id.* 386. 8 *Wend.* 199. In the last case, Chancellor Walworth says, to bring a case within that decision, *King* v. *Baldwin*, 17 *Johns. R.* 386, the surety must show that the principal was solvent and within the jurisdiction of the state when the request to prosecute was made, and that the creditor, without any reasonable excuse, refused or neglected until the debtor became insolvent. It is not alleged that this case comes within the principle just mentioned. Nor has it any connection with the doctrine of guaranty. The defendants are sureties in the strict and proper sense of that term, and as such their rights are to be determined. If it was the moral duty of the plaintiffs to have called their officer to account, according to the regulations which they had prescribed for the conducting of their own affairs, it was the legal duty of the defendants, the sureties, to have examined into the state of the accounts of the person for whose correctness they had become responsible. There is, therefore, no ground to complain on account of the hardship of the case. The law imposed upon them entire responsibility for the conduct of

ALBANY,      their principal.   Had they inquired into his accounts and
October, 1835. found the extent of his defaults, they might have required
Rogers       the plaintiffs to prosecute, or they might have had a remedy
v.           in equity; but the facts set forth in their last plea constitute
Lynds.       no defence at law.

The plaintiffs are entitled to judgment on both demur-
rers, with leave to defendants to amend their plea on pay-
ment of costs.