## Case No. 3,797.

DENNIS v. RIDER et al.

[2 McLean, 451.] [1]

Circuit Court, D. Illinois. June Term. 1841.

RELEASE OF SURETY — PRINCIPAL'S INSOLVENCY — EXTENSION OF TIME—SUBROGATION—LEGAL AND EQUITABLE REMEDIES.

1. The surety by giving notice to the creditor, and requesting him to sue the principal debtor, who is in failing circumstances, does not release himself, though the principal should become insolvent.

2. The relief of the surety, under such circumstances, is in equity.

3. Where the obligee changes the contract, by giving longer time, &c., the surety is discharged. And this matter may be set up at law.

4. In such a case the discharge of the surety does not depend on the insolvency of the obligee, but on the alteration of the contract. But the solvency or insolvency of the principal debtor can better be ascertained in chancery, where his answer may be required.

5. The surety, on the payment of the debt, is entitled to be substituted to all the rights of the creditor.

6. This does not mean that the original obligation, which is discharged by the payment, shall be assigned to the surety; but mortgages, &c.

Robbins & Welles, for plaintiffs.
Mr. Logan, for defendants.

OPINION OF THE COURT. This action is brought on a promissory note. The defendants pleaded nonassumpsit; and four special pleas, substantially, that Pierson was the security of the other defendants. That he gave notice to the agent of the plaintiffs, that the principals were in doubtful circumstances, and requested him to commence suit. That his co-defendants were then solvent, and able to pay the amount, but the plaintiffs neglected to bring suit until, &c., at which time their co-defendants became insolvent. To these pleas the plaintiffs' counsel demurred.

In this state there is an act entitled "An act for the relief of sureties, in a summary way, in certain cases." approved 24th March, 1819, which provides that the surety may give notice to the promisee or holder of the note, in writing, forthwith to sue, &c., and if he shall fail to do so he shall forfeit the right to recover from the surety. The pleas are not filed under this statute, but at common law. It is not pretended that the notice to the holder of the note was given in the manner required by the statute. To sustain these pleas the case of Pain v. Packard, 13 Johns. 174, is relied on. In that case it was said, if an obligee, or holder of a note, who is requested by the surety to proceed without delay and collect the money of the principal, who is then solvent, neglects to proceed against the principal, who afterwards becomes insolvent, the surety will be exonerated. That case was decided without argument, and no authority was referred to except a decision in 10 East. 34. In the case in East, there was a plea filed similar to the pleas in this case, which was not demurred to. Lord Ellenborough said: "The only question is, whether the laches of the obligee, in not calling upon the principal so soon as they ought to have done, if the accounts had been properly examined from time to time, be an estoppel, at law, against the sureties. I know of no such estoppel at law, whatever remedy there may be in equity."

The defendants' counsel, also, relies on the

---

case of King v. Baldwin, 17 Johns. 384. That was an appeal from the decision of the chancellor, before whom relief was asked by a defendant, against whom judgment, as surety, had been obtained. He pleaded to the suit, at law, that the plaintiff neglected to bring suit, although specially requested, on the ground that his principal was about to become insolvent. The court overruled the evidence under the plea. A motion was made for a new trial, but not prosecuted. And on the ground that the promisee might have recovered from the promisor, had the suit been prosecuted as requested, the bill was filed praying relief. Chancellor Kent dismissed the bill on the ground that the complainant was entitled to no relief. He examined the doctrine at large, and maintained that there could be no relief at law. And that the circumstances of the case entitled him to none in equity. In the court of errors Judge Spencer reviews the opinion of Chancellor Kent, and reaffirms the doctrine in the case of Paine v. Packard. The judges who decided that case were Thompson, C. J., Spencer, Vanness, Yates and Platt. The court of errors being equally divided, the presiding officer reversed the decision of the chancellor. Platt, J., changed his opinion, being convinced that the decision in Paine v. Packard was erroneous. Yates concurred with him, and, if I mistake not, Vanness. In the case of Bank of Steubenville v. Carrol's Adm'rs, 5 Hammond, 207, the defendant pleaded that he signed as surety, &c., to which the plaintiff demurred, and the court decided that, if any change be made between the creditor and the surety that it discharges the surety, and that his defence may be set up at law as well as in equity. A case is cited in 14 Wend. 165, in which it was held that a notice to the agent of the promisee to prosecute the principal, by the surety, was sufficient.

The rule in New York may be considered, perhaps, as settled by the decision above cited in the court of errors. A decision in that court establishes the law for the state of New York; but it is believed that, beyond the jurisdiction of that state, the decisions of the supreme court are chiefly consulted as authority. The rule is well established that where an indorser has become fixed by demand and notice, if the holder of the bill shall, for a valuable consideration, agree with the drawer, or acceptor, to give him more time, it discharges the indorser. McLemore v. Powell, 12 Wheat. [25 U. S.] 554; Bank of U. S. v. Hatch [Case No. 918]; Id. 6 Pet. [31 U. S.] 250. This is upon the ground that the surety has a right, at any time after the bill becomes payable, to pay the holder, and be substituted to all his rights. Not that he is entitled, as has been ruled by several courts, to an assignment of the bill, because that is discharged by the surety, but he is entitled to all the collateral securities, such as mortgages, pledges of personal property, &c., which the creditor may hold. But if the creditor make a contract to extend the time of payment, this suspends this right of the surety, and he is, consequently, released. And so if the creditor, without the consent of the surety, changes the nature of the obligation of the principal in any respect. In these cases relief may be had at law. The question is not whether the surety has, in fact, been injured, but whether his right to pay the bill or note has not been suspended; or, whether the contract has not been materially altered by the creditor and principal. But, until the case of Paine v. Packard, in 13 Johns. and Bank of Steubenville v. Carrol's Adm'rs, 5 Hammond, no case has been found where relief to a surety beyond this has been given at law. The case of Paine v. Packard introduced a new rule. It was so considered by many of the most learned and able men, who gave opinions in the case of King v. Baldwin, in 17 Johns. And this rule is essentially different from the one which, prior to that time, had been recognized at law. That was founded upon an essential change of the contract, either as to the time of payment, or the acts to be done, without the assent of the surety. But the case of Paine v. Packard held, if the creditor neglected to prosecute the principal, on being required to do so by the surety, and the principal proved to be insolvent, the surety was discharged. And this without any indemnity offered by the surety, as to the costs incurred. Now, the rule has been, at law, that the creditor, beyond demand and notice, is not bound to active diligence. And there seems to be reason in this. For the surety confided more in the principal debtor than the creditor. The creditor, until the surety became bound, was unwilling to trust the principal. Now, if the creditor or the surety must be subjected to inconvenience and expense on account of this confidence, should it not fall upon the surety? He was the active agent in inducing the contract, and justice would seem to require that to save himself from loss he should again become active. And this is an established principle. In pursuance of former decisions he could pay the money and claim all the rights of the creditor, or he could file a bill, and, on the special circumstances of the case, ask the court to compel the creditor to bring suit. The New York rule, however, gives, at law, the same effect to a notice as results from a decree under the former rule. Now, the law having established the rule, that a suit in chancery is necessary, it would seem not to be advisable to change it on mere notions of policy or convenience. But, if this question were now open, it might be considered a matter of doubtful policy to adopt the New York rule. There are many matters which, under that rule, it might become necessary to investigate, and which more safely and properly might be examined in chancery than at law. Complicated matters of fraud, connected with the circumstances of the

principal debtor, might arise; the time of his insolvency, &c., which could not be well inquired into, or understood, without his answer, and his answer can only be required in chancery.

In a plain case where the principal debtor was solvent when the notice was given, and afterwards became insolvent, it would seem the New York rule would be salutary. But such a case, it is presumed, would seldom occur. The former rule rested upon the change of the contract. This was a matter of fact and of law, which the jury, under the instructions of the court, could determine. But whether the surety had been injured by the neglect of the creditor to prosecute the principal debtor, must often give rise to questions which can only be investigated in chancery. The old rule, therefore, seems to be safer and better than the new one. And this is, no doubt, the reason why the new rule has had so limited an influence. Mr. Justice Story, in his Equity Jurisprudence (volume 1, p. 592, § 639), says—if the debt is due, and the creditor does not choose to call upon the debtor for payment, the surety may come into equity by a bill against the creditor and the debtor, and compel the latter to make payment of the debt, so as to exonerate the surety from his responsibility. In cases of this sort, he says, there is not, however, any duty of active diligence incumbent upon the creditor. It is for the surety to move in the matter. But if the surety requires the exercise of such diligence, and there is no risk, delay, or expense, to the creditor, or a suitable indemnity is offered against the consequences of risk, delay, and expense, it seems that the surety has a right to call upon the creditor to do the most he can for his benefit, and if he will not a court of equity will compel him. Nisbet v. Smith, 2 Brou. Ch. 579; Hayes v. Ward, 4 Johns. Ch. 123. In the 322d page, § 327, of the same volume, Mr. Justice Story says—whether the surety can thus compel the creditor to sue the principal or not, he has a clear right, upon paying the debt to the principal, to be substituted in the place of the creditor, as to all securities held by the latter for the debt, and to have the same benefit, that he would have therein. Craythorne v. Swinburne, 14 Ves. 162; Wright v. Morley, 11 Ves. 12, 22. In the case of Wright v. Simpson, 6 Ves. 734, Lord Eldon admits that the surety might have a right to compel the creditor to proceed against the debtor under some circumstances. But, then, in such a case, the surety is compellable to deposit the money in court for the payment of the creditor. So that, in fact, it is but the case of an indirect subrogation to the rights of the creditor, upon a virtual payment of the debt by such a deposit. A surety in a bond will be released when the obligee does some act which varies the terms of the original contract: but forbearance to sue is not such an act, and if the surety think otherwise, he should apply to the court of equity and compel the obligee to sue. Burn v. Poaug, 3 Desaus. Eq. 604. The indulgence granted to a principal, which is to discharge from his engagement, must be of that kind whereby the value of the contract is changed, or, whereby the creditor, without the consent of the surety, and by his own act, puts it out of his own power to enforce the payment of the debt by the principal. It does not mean a mere forbearance to sue the principal, which a court of equity, on application of the surety, might direct him to do, on pain of foregoing his claim against the surety. Buchanan v. Bordley, 4 Har. & McH. 41. A surety apprehending danger from the delay of the creditor, may come into this court and compel the creditor to sue the principal debtor, on giving an indemnity against the consequences of risk, delay and expense. Hayes v. Ward, 4 Johns. Ch. 129. To require the creditor to sue the principal on a mere notice of the surety, without an indemnity, when the surety could not be included in the suit, would seem to be unreasonable. Upon the whole we think that the case of Paine v. Packard [supra] is not sustained by authority, and, on principle, it is not recommended by such considerations of policy, as should lead to the adoption of the rule sanctioned by it. We think it safer to follow the old rule, which is well established in practice. The demurrer to the pleas is sustained. Judgment for the plaintiff, with stay of execution, until the next term, by consent, &c.