## Executors of Philip H. Baker *v.* William Marshall and Orson Rickor.

Where the holder of a note, of his own mere motion, commenced an action against both the principal and surety upon the note, and attached property of the principal sufficient to pay the note, and that was known to the surety, and the payee afterwards discontinued the suit and permitted the property to go back into the hands of the principal, it was held that the surety was not released from his liability, notwithstanding the principal subsequently became insolvent.

Assumpsit on a promissory note, signed by the defendants, and made payable to one Hall, and by him indorsed to the plaintiffs' testator.  Plea, the general issue, and trial by the jury.

The plaintiffs having proved the execution and indorsement of the note, the defendants proved that the defendant Marshall was the

principal on the note and the defendant Rickor a surety, only, for Marshall, and that this was known to the payee of the note, and to the testator at the time of the indorsement; that the testator, Nov. 30, 1840, sued out a writ of attachment on the same note, against both these defendants, and attached thereon property of Marshall sufficient to pay the debt, and made service also on Rickor, and that Rickor also was informed of the attachment of Marshall's property; that, subsequently, the testator discontinued his said action, and permitted the property attached to go back into the possession of Marshall; and that Marshall, subsequent to that time, became and still continued insolvent.

The defendant Rickor, upon these facts, claimed, and requested the court to instruct the jury, that he was no longer liable upon the note as surety. But the court charged the jury that these facts did not show any legal discharge of Rickor. The jury returned a verdict for the plaintiffs, for the amount of the note. Exceptions by defendants.

*E. Farr* for defendant Rickor.

1. When any security is taken, either by the holder, or by a surety on a note, not only the holder, but each surety, has an interest in that security, that it shall be faithfully applied upon the debt, unless the debt is otherwise satisfied by the principal. *Hinsdill* v. *Murray et al.,* 6 Vt. 136. *Bank of Manchester* v. *Bartlett,* 13 Vt. 315. And this is so, though the security be taken by the holder, or by a surety, of his own motion, without direction from others interested;—see same cases.

2. Any conduct of the holder, which would induce a surety of ordinary prudence to *rest,* supposing the debt to be paid, or secured, though no security be taken, discharges the surety *pro tanto.* 4 Vt. 134.

3. Any voluntary discharge of a surety by the holder of a note, or of any security or means in his hands, which he holds with the right to apply it upon the debt, or which can be retained for the benefit of the sureties, if the principal fail to pay the note, discharges the sureties. This doctrine runs through all the authorities, and is founded on the strongest principles of justice and equity. *United States* v. *Boyd et al.,* 15 Pet. 208.

To apply, then, those principles to this case;—the property of Marshall was attached, and thus Baker, the holder of the note, had property under his control, with the right to have it applied upon the note. Property thus taken in the custody of the law certainly gives rights equal to those which accrue when property is voluntarily turned out,—not to pay the debt,—but to be holden until the debt is otherwise paid; and Rickor had a right to have the property held for his benefit. The property having been surrendered by the holder to the principal, Rickor is discharged. 9 Vt. 143. 13 Vt. 318.

The commencing a suit for collection of a note, accompanied by a sufficient attachment of property, is such a proceeding as would result in extinguishing the debt within a limited time, unless some new agreement were made for time. Nothing of this kind was brought to the knowledge of Rickor, and consequently he had a right to suppose the debt paid, and, as a man of ordinary prudence would do, he *rested quiet* in that belief. The principal has now become insolvent, and the surety is discharged.

This case varies from the case of *Bank of Montpelier* v. *Dixon,* 4 Vt. 587. 1. In that case the writ was not served upon the sureties, and hence they knew there could not have been a judgment. 2. The debtor's title to the property was questioned, and was not guaranteed. 3. The property was not given up, but was exchanged in a prudent manner, and nothing was done in bad faith by the creditor.

*A. Underwood* for plaintiffs.

The plaintiffs contend that nothing short of an *express agreement* with the principal, enlarging the time of payment, and that upon *consideration,* and *without the assent* of the surety, will discharge the surety. Hov. on Fraud 171, 172 and notes. This case comes fully within the principle of the case of the *Bank of Montpelier* v. *Dixon,* 4 Vt. 587, and the judgment of the county court should be affirmed.

The opinion of the court was delivered by

BENNETT, J. The creditor, in this case, upon his own mere motion, caused the property of the principal debtor to be attached, and the property, for some cause which does not appear in the bill of exceptions, was given up to the debtor, instead of being applied

in payment of the debt.   There was no request by the surety to have the suit commenced by an attachment of the principal debtor's property,—none that it should be applied in payment of the debt,—and there is no evidence that it was given up in fraud of the rights of the surety.

It is, I think, quite clear that such a state of facts cannot operate to discharge the surety.   It is well settled that mere delay to sue the principal does not discharge the surety.   Chit. on Cont. 421. So the delay or the neglect of the principal to sue the surety, though requested to sue him, is no discharge of the surety; and I think it makes no difference, especially at law, that the principal becomes insolvent.   The surety may pay the debt, and then sue the principal; or may be subrogated in chancery to all the rights of the creditors.   The case of the *Bank of Montpelier* v. *Dixon,* 4 Vt. 587, is much like the one at bar, and is decisive of it.

The judgment of the county court is affirmed.