JAMES H. TAYLOR, Appellant, *v.* SAMUEL BECK, Appellee.

APPEAL FROM SCHUYLER.

A creditor is not bound to make use of active diligence against a principal debtor, on the mere request of a surety. The 97th chapter of the Revised Statutes has no application to contracts, other than bonds, bills, and notes, for the direct payment of money or property; it does not extend to contracts for the performance of other acts, or to agreements containing mutual covenants; it embraces only such obligations as are transferable by indorsement, so as to vest the legal interest in the assignee.

A surety is not permitted to discharge himself, by requesting the creditor to proceed against the principal; the undertaking of a surety is different from that of an indorser.

It is erroneous to ask of a witness his opinion, as to whether the delivery or nondelivery of a portion of articles contracted for, was of importance to a party.

In an action upon a contract to deliver an "entire lot of broom brush," it is erroneous to instruct the jury, that if they believe, from the evidence, that the plaintiff has substantially performed the agreement, they will find for him; such a contract is to be performed in full, and not by fragments.

Where a plaintiff declares on a contract, and alleges full performance on his part, without any count upon a *quantum meruit*, he is bound to prove that he has fully performed the contract.

THIS was an action of debt, commenced by James Beck, against Thomas Freeman and James H. Taylor, in the Schuyler Circuit Court, upon a written agreement under seal in these words, viz.:

Articles of agreement made and entered into, between James Beck of the county of McDonough and State of Illinois, and Thomas Freeman of the county of Schuyler and State aforesaid, witnesseth, that the said Beck has this sold, and binds himself to deliver to said Freeman, his entire lot of broom brush, raised by him this year, on or before the first day of March next, scraped and clean of seeds, and to be delivered at the town of Rushville, Illinois, at the shop of said Freeman; to be delivered in good merchantable order, unless after using due diligence he should be prevented by accidents of weather. The said Freeman, on his part, agrees and binds himself to pay to the said Beck therefor the sum of three hundred and fifty dollars in the following manner: Fifty dollars in merchandise at Rushville;

one hundred and thirty dollars on or before the (15th) fifteenth day of October next; sixty-five dollárs on or before the first day of December next; and the balance to be paid on or about the first day of March next. Witness our hands and seals, this 3d day of August, A. D. 1850.

THOS. FREEMAN, [ SEAL ]
Surety on the part of Freeman,
J. H. TAYLOR, [ SEAL ]
his
JAMES + BECK, [ SEAL ]
mark.

Attest 1 & 3

P. H. Walker.

Declaration contains eight counts.

1. Sets out the agreement according to its legal effect; but in describing the broom brush to be delivered by himself to defendant Freeman, calls it a " certain lot of broom corn brush." The manner in which plaintiff avers performance is in these words, viz. : — " Nevertheless the said plaintiff in fact says, that although he, the said plaintiff, after the executing the said agreement, pursuant to the said article of agreement, under seal as aforesaid, did, on or before the said first day of March, A. D. 1851, deliver to the said defendants all and every part of said broom corn brush by him, the said plaintiff, raised in the year A. D. 1851, scraped and cleaned of seed, and in good merchantable order, at the shop of said Freeman, at and in the town of Rushville, in the county of Schuyler aforesaid, yet, &c." The count then proceeds to assign as breaches, the non-payment of all the instalments in the contract, &c.

2. Sets out the agreement and performance of the plaintiff precisely like the first count, but assigns as a breach the non-payment of the instalment of $130, due October 15, 1850.

3. Is like the counts 1 and 2 in every particular; assigns for breach the non-payment of the instalment of $65, due December 1, 1851.

4. Is in every respect like counts 1, 2, and 3, but assigns the breach in the non-payment of the balance, or last instalment of $105, due March 1, 1851.

5. Attempts to set out the contract *in hæc verba*, and is substantially correct, with this exception, the signature of " Tho-

32*

mas Freeman" is written at length; and prefixed to the signature of Taylor, are these words, "security on the part of Freeman;" on the left hand side of the signature, are these words, "Attest, 1 and 3, P. H. Walker," and the residence of the plaintiff is stated to be "McDonough" county. The averment of performance by plaintiff is the same as in counts 1, 2, 3, and 4; breach, non-payment of all the instalments.

6. Sets out agreement as in count 5, according to its tenor and effect. The variances in the body of the instrument, do not occur as in count 5, but they do in the signatures and attestation. The averment of performance is like all of the preceding counts. Breach, non-payment of the instalment of $130, due October 15, 1850.

7. Sets out agreement according to its tenor and effect; and in describing the broom brush to be delivered, the agreement as set out, uses these words "certain lot of broom brush," and the same variances in signature of Freeman; the words prefixed to Taylor's name, and in the attestation, occur as in counts 5 and 6. The averment of performance is like the preceding counts. Breach, non-payment of the $65, due December 1, 1850.

8. Sets out the agreement as in counts 5, 6, and 7. The variances are the same as in count 7. Averment of performance, same as in all of the other counts. Breach, non-payment of the $105, due March 1, 1851.

Defendant Freeman filed 6 pleas, September 15, 1851.

1. *Non est factum*, upon which an issue in fact was joined.

2. Payment. Replication. *Similiter*.

3. That plaintiff did not deliver all the brush, but negligently, &c., wasted a part, whereby consideration has failed to the amount of $300. To this plaintiff replied with a common traverse; upon which issue was joined.

4. That 5 tons of the brush were not merchantable, but damaged, by which consideration has failed to extent of $300. Replication traversing plea, upon which an issue in fact was formed.

5. That plaintiff fraudulently represented he had raised 30 acres of brush; that he only raised 10 acres, whereby consideration has failed to the extent of $300. Replication denies fraud, and issue is taken.

6. *Nil debet,* issue joined thereon.

September 15, 1851. Taylor demurred to the declaration; joinder; September 16, demurrer overruled.

September 16, Taylor filed 8 pleas.

1. *Non est factum,* and issue joined thereon.

2. Craves oyer, and avers that after the time for delivery of the brush named in the contract, to wit, on, &c., he notified and requested the plaintiff to bring suit immediately against defendant, &c.; that the contract was made in Schuyler; that the defendants both resided there; that the Circuit Court of said county held its first term after said notice, on the 4th Monday in April, 1851; that said court had jurisdiction to render judgment on said contract, &c.; that plaintiff neglected to sue, &c.; that Freeman, from the time of said notice until May 15, 1851, had lands and tenements, goods and chattels, of value sufficient to satisfy whatever judgments recorded at the term aforesaid against said defendant, &c.; that after May, said Freeman became, and has ever since remained insolvent, &c.

3. Craves oyer, and avers that after the period of time fixed in said contract for the delivery of said broom brush, to wit, on, &c., defendant notified and requested plaintiff to institute, and prosecute forthwith a suit against said defendant, &c.; that one term of the Circuit Court of Schuyler hath intervened between the time of giving said notice, &c., and the present term of this court; that plaintiff neglected to sue at the first term, &c.

4. Craves oyer, and avers that plaintiff did not deliver all of his brush on or before March 1, 1851; that a large quantity, to wit, ten tons, remained upon the farm of the plaintiff, which he failed to deliver, &c.; that after the day fixed for the delivery, to wit, May 15, 1851, the said plaintiff delivered, and the defendant Freeman received the said residue of broom brush, without the knowledge or consent of the said defendant Taylor, and without any consultation with him, &c.

5. Craves oyer, and avers that after the making of the contract, and before the time for the delivery of the brush had arrived, to wit, on, &c., at, &c.; the said defendant Freeman, without the knowledge or consent of the defendant, waived the

delivery of the brush on the day mentioned in said contract, and by an agreement with said plaintiff, extended the period for the delivery, &c. for a longer space of time, to wit, until May 15, 1851, which agreement was made, &c., without consulting with the defendant, &c.

6. Payment. Replication and issue.

7. Craves oyer, and avers that plaintiff did not deliver all of the brush, within the time stipulated, but a large quantity was delivered by plaintiff, and received by Freeman long after the said first day of March, to wit, on, &c., without the knowledge or consent of the defendant, &c.

8. Craves oyer, and avers that, after the 1st, 2d, and 3d instalments became due, and before any part thereof had been paid by Freeman, to wit, on, &c., the said plaintiff, without informing the defendant of the default of Freeman, but fraudulently concealing said default, delivered to Freeman the whole of the brush, &c.

Plaintiff demurred to Taylor's pleas, 2, 3, 4, 5, 7, and 8, which demurrer was overruled as to said pleas, 4, 5, 7, and 8, and sustained as to pleas 2 and 3. Plaintiff then replied, traversing pleas 4, 5, 7, and 8, and issues in fact were formed thereon. Cause tried, upon the issues of fact aforesaid, by a jury. Verdict rendered for plaintiffs, for $150 damages against both defendants.

Taylor moved for a new trial; overruled, and judgment on the verdict, for $150 damages, and costs. Taylor prayed an appeal.

Bill of exceptions filed, which shows that the agreement hereinbefore set forth was offered in evidence by plantiff. Objected to for vacancies; overruled, and exception.

*Testimony of plaintiff's witnesses.*

James Blazier: Resides near plaintiff; knew his brush crop of 1850; saw crop after it was cut; plaintiff used reasonable care, skill, and diligence, in cultivating, cutting, curing, and preparing the crop for market; that his crop was between five and six tons; details the negotiations between plaintiff and Freeman, in August, 1850; that, during winter following, plaintiff

delivered all the brush to Freeman, except a small lot of about 300 pounds, which was not delivered until last of April, 1851; this last lot was damaged; that he had a conversation with Freeman, March 3, 1851, relative to a contract between witness and Freeman, when reference was made to plaintiff's contract, and Freeman said, " I have got the old man's brush, and have not got yours," and expressed himself satisfied with the brush he got from plaintiff; that, though some of it was damaged, it would work itself. — (These declarations objected to by Taylor; overruled; exception.) That, when this conversation took place, plaintiff had not been to Rushville for two weeks; that he never heard Taylor say any thing about the contract; that Freeman was a broom manufacturer, resided at Rushville, and was a good judge of broom brush. Plaintiff's counsel then asked the witness this question: " Whether the non-delivery of 300 pounds of broom brush, upon a contract to deliver an entire crop, would make any difference, or be of much importance to the manufacturer." Witness replied: " It would not." (Question and answer objected to; overruled, and exception.) On cross-examination, witness said, he did not know when plaintiff commenced delivering the brush, nor when last load was delivered; that he could not swear plaintiff delivered all of his crop, but he supposed so; that he knew plaintiff and son were hauling brush to Freeman during the winter; that he was son-in-law of plaintiff's; and that he and Freeman had a difficulty about a brush contract.

William Hastie, keeper of town-scales of Rushville: Weighed eight or nine loads of brush, delivered by plaintiff to Freeman; two loads, delivered January 21, 1851, weighing one ton; two loads, January 27, weighing one ton; balance of the nine loads, delivered in February; total amount delivered by plaintiff to Freeman, and weighed by witness, 6,725 pounds; that Freeman told witness, that plaintiff had delivered some brush not weighed. Cross-examination: Freeman did not say how much was delivered without weighing; nor did witness remember when the conversation took place.

*Defendant's evidence.*

William L. Wilson: That he had worked in Freeman's shop

since November, 1850; that plaintiff commenced delivering his brush in January, 1851; that plaintiff's son brought one load just before Freeman went to New Orleans; that Freeman left for New Orleans March 15, 1851, and returned on 14th or 15th April; that Collins Ireland, one of Freeman's hands, returned from the river March 5, 1851; that, on the morning of that day, plaintiff's son left Rushville for his father's farm; that, on the day before, he had brought down one load of brush; that another load, of 300 pounds, was delivered after Freeman returned from New Orleans. Cross-examination: One reason why he knew plaintiff's son had brought one load after March 1st was, because he knew the difference between spring and winter weather; and that plaintiff was to let Freeman have pork; witness was to have some of it; he was particularly interested in getting the pork; and the talk about the pork was just before Freeman went to New Orleans.

Collins Ireland: Plaintiff commenced delivering his brush between January 1 and 27, 1851; four loads delivered between those days; left for the river January 27, returned March 5; a small lot of brush delivered in April, 1851, in a damaged condition; that the brush delivered by plaintiff to Freeman was damaged; that it had been damaged in the field and mow; that it was not scraped clean, and the points were injured by the machine; that the brush, for these reasons, was not merchantable; that the four loads first delivered were damaged, and Freeman told plaintiff so; plaintiff replied, that all of the bad brush had been delivered, that the balance would be better; that all of the rest of the brush was like the first lot delivered; he saw no improvement; that good brush was worth $60 per ton, the brush delivered by plaintiff was not worth more than $40 per ton. Cross-examination: He could tell the way in which brush was damaged on inspection; he was a broom-maker, and had been several years; that when brush was injured in the field, it became spotted, but would generally bleach out; when injured in the mow, it was occasioned by being put up damp or wet; that it would sweat and soften the stalks, and in this way become materially injured; that this lot of brush was injured in both ways, and could not be worked without considerable loss.

*Plaintiff's instructions.*

1. That, if they believe from the evidence that the plaintiff substantially performed the agreement on his part, to be performed according to the terms and under the conditions and restrictions therein contained, he is entitled to recover the amount agreed upon in said contract, less the amount paid thereon, against the said defendant.

3. That if the jury believe, from the evidence, that the plaintiff delivered to the defendant a quantity of broom brush within the time specified for the delivery thereof, and that the defendant, on inspection, received and accepted the same, the said plaintiff has a right to recover therefor in this action.

These instructions, numbered 1 and 3, were given by the court, and defendant Taylor excepted to the same.

*Errors assigned.* Declaration insufficient, and plaintiff's demurrer to Taylor's pleas ought to have been sustained to it. Sustaining plaintiff's demurrer to Taylor's pleas 2 and 3. Admitting the written agreement in evidence. Admitting declaration of Freeman. Permitting witness, James Blazier, to give his opinion, &c. Giving plaintiff instructions, Nos. 1 and 3. Overruling motion for new trial. Verdict insufficient. Rendering judgment for damages only.

The cause was heard before MINSHALL, Judge, at September term, 1851, of the Schuyler Circuit Court.

R. S. BLACKWELL, for appellant.

WARREN & EDMUNDS, for appellee.

TREAT, C. J. *First*, Did the court err in sustaining the demurrer to the second and third pleas of Taylor? These pleas raise the question, whether the creditor is bound to make use of active diligence against the principal debtor, on the mere request of the surety. The 97th chapter of the Revised Statutes has no application to the contract in question. That statute only relates to bonds, bills, and notes, for the direct payment of money or property; and does not extend to contracts for the performance

of other acts, or to agreements containing mutual covenants. It embraces only such obligations as are transferable by indorsement, so as to vest the legal interest in the assignee. Unless, therefore, the pleas are good at common law, they must be held insufficient. It is clear that the third plea presents no defence to the action. It does not show that the surety has been damnified, by the failure of the creditor to prosecute the principal. Indeed, it was conceded on the argument, that this plea was bad, unless the contract should be held to be within the statute. There is no rule of. the common law, nor principle of equity, that will enable a surety to relieve himself from liability, by a simple request to the creditor to proceed against the principal. The English cases uniformly agree, that mere passiveness on the part of the creditor will neither exonerate the surety at law nor in equity. And, independent of decisions based upon particular statutes, such is decidedly the weight of authority in this country. The notion, that the surety can compel the creditor to active diligence against the principal, at the hazard of releasing the surety, is expressly repudiated in the following cases : Bellows *v.* Lovell, 5 Pick. 307; Leavitt *v.* Savage, 16 Maine, 72; Bull *v.* Allen, 19 Conn. 101; Executors of Baker *v.* Marshall, 16 Vt. 522; Davis *v.* Huggins, 3 N. Hamp. 231; Croughton *v.* Duvall, 3 Call, 69; Manning *v.* Shotwell, 2 South. 585 ; Cass *v.* Howard, 8 Blackf. 190; Executors of Dennis *v.* Rider, 2 McLean, 451. It was decided in Pain *v.* Rickard, 13 Johns. 174, that, if the creditor is requested by the surety to collect the debt from the principal, who is then solvent, and the creditor neglects to proceed against the principal until he becomes insolvent, the surety is thereby discharged, and may avail himself of the discharge at law. The same doctrine was afterwards asserted, in the case of Cope *v.* Smith, 8 Serg. & R. 110. But the courts in New York and Pennsylvania, although they still adhere to the rule established in Pain *v.* Packard, are evidently not satisfied with the reasons upon which it was founded. In Kenrick *v.* Borst, 4 Hill, 650, Cowen, Justice, said: " What principle such a defence should ever have been found to stand upon, in any court, it is difficult to see. It introduces a new term into the creditor's contract. It came into this court without precedent; was after-

wards repudiated even by the Court of Chancery, as it always has been both at law and equity, in England; but was restored on a tie in the Court of Errors, turned by the casting vote of a layman. I do not deny that the error has become inveterate; though it has never been treated with much favor." See also Gardner *v.* Ferree, 15 Serg. & R. 28; and Erie Bank *v.* Gibson, 1 Watts, 143.

There is no sound reason for permitting a surety to discharge himself, by requesting the creditor to proceed against the principal. The undertaking of a surety is absolute in its terms; and not conditional, as is the engagement of an indorser. He is directly, and not contingently liable to the creditor. The latter has a direct remedy against both principal and surety. If the obligation is joint and several, he has an undoubted right to proceed against the surety alone. It is no part of his contract, that he will take active measures to collect the debt. The duty to act rests with the debtors. All that the surety has the right to require of the creditor is, that no affirmative act shall be done, that will operate to his prejudice; such as an extension of the time of payment by a binding arrangement with the principal, or the giving up of other securities for the payment of the same debt. The law affords the surety a sufficient protection. He can pay the debt the moment it falls due, which is doing no more than he agreed to do; and immediately resort to the principal for reimbursement. Upon payment of the debt, he may, in equity, be subrogated to all the rights of the creditor. He may also, in the first instance, go into equity to compel the specific performance of the contract by the principal. On this subject, it is said, in Story's Equity Jurisprudence, in § 639 : " If the debt is due, and the creditor does not choose to call upon the debtor for payment, the surety may come into equity by a bill against the creditor and the debtor, and compel the latter to make payment of the debt, so as to exonerate the surety from his responsibility. In cases of this sort, there is not, however, any duty of active diligence incumbent on the creditor. It is for the surety to move in the matter." The pleas presented no valid defence to the action, and were properly adjudged insufficient by the Circuit Court.

*Second.* The opinion of the witness upon the question, whether the non-delivery of a portion of the brush, was a matter of any importance to Freeman, was improperly received. The true question was, had the plaintiff complied with his contract to deliver the whole of the brush, and not whether Freeman was injured by his failure to deliver a part. On the principle of the admission of this testimony, if it may be called such, a party may excuse himself from performing his engagement altogether, if he can show that the other party would not derive any actual benefit from its performance. Such is not the law. Contracts are not to be thus mutilated by the mere opinions of witnesses. Parties have the right to make their own agreements; and it is the duty of the courts to enforce them, and not to encourage their violation.

*Third.* Did the court err in giving the first and third instructions asked by the plaintiff? The first instruction was erroneous, and well calculated to mislead the jury. It should have been more definite, in reference to the performance of the contract. It gave the jury too wide a discretion in this particular. The contract was made to be performed in full; and it is not to be enforced in fragments. A party has the right to insist upon a strict fulfilment of his contract. An agreement to deliver a thousand bushels of wheat, would not be legally performed by the delivery of nine hundred bushels only. The contract in this case, to deliver an " entire lot of broom brush," would not be properly complied with by the delivery of nine tenths of the crop. And yet, in either case, a jury very likely would, under the generality of this instruction, come to the conclusion that the contract had been sufficiently executed. The law, it is true, does not regard trifles; and, it may be, that, on this principle, the failure of the plaintiff to deliver an inconsiderable quantity of the brush, would not affect his right to recover upon the contract. So in the case of the contract to deliver wheat, a trivial deficiency in quantity would not be regarded. But the case should have been put to the jury on this ground; and not upon the ground, whether there had been, in the opinion of the jury, a substantial performance of the contract.

The third instruction was clearly erroneous. The plaintiff

declared on the contract, and alleged full performance thereof on his part. He rested his right to recover solely on the ground, that he was in no default. There was no count upon a *quantum meruit*. In order to recover, therefore, he was bound to prove that he had fully performed the contract. In an action against Freeman, he might, perhaps, under the common counts, be entitled to recover upon a part performance. Whether he could recover against Taylor, except upon a complete performance, would present a more serious question.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*