## STERNS *vs.* MARKS, administratrix, &c.

Where a guarantor knows that the undertaking of his principal is liable to be defeated, he must be considered as entering into his obligation with reference to such a contingency.

The obligation of a guarantor, like that of an indorser, covers all defects in the note itself, as well as the principal's insolvency; and is available notwithstanding the signature of one of the makers is unauthorized.

And knowledge of the holder that the signature of one of the makers is unauthorized, when it is also known to the guarantor, does not deprive him of the right to rely upon the guaranty.

The judgment of a court of equity, directing the name of one of the makers of the note to be canceled, because it was used without authority to the knowledge of the holder, has the same legal effect upon the rights of the parties as if the holder had commenced a suit upon the note, which had resulted in a judgment discharging him from liability for the same cause.

It is competent evidence in a subsequent suit upon the guaranty, although the guarantor was not a party.

And further proof, by extrinsic evidence, that the guarantor, when he signed the guaranty, had knowledge of the facts which led to the judgment, is sufficient to fix his liability to the holder, under his contract of guaranty.

Under a contract for guaranty of collection, the holder of the guaranty is not required to notify the guarantor of his failure to collect, before he can bring a suit upon the guaranty.

THIS action was commenced against James Marks upon his guaranty of the collection of a note for $1500, purporting to be made by *R. H. Hibbard* and *Theodore Lewis*, as follows, viz :

"*Cherry Valley, April* 5, 1855.

$1500.    One year from date, we or either of us promise to pay Daniel Sterns or bearer fifteen hundred dollars, for value received, with interest.

(Signed)        R. H. HIBBARD.
                        THEODORE LEWIS."

(Indorsement.)    "For value received, I hereby guaranty the collection of the within note.

(Signed)        JAS. MARKS."

Marks having died, the action was continued against the defendant as his administratrix.    It appeared that the note was made for the accommodation of Hibbard.    Evidence was given tending to prove that it was the understanding of Lewis, when he signed the note, that Marks was to sign it also, before it was delivered to the plaintiff; that Marks had agreed with Lewis to sign it, and that he supposed that Marks had signed it, until long after the money was advanced upon it.

Evidence was also given, tending to show that when Marks refused to sign the note he took it to the plaintiff with his guaranty upon it; that the plaintiff told him he expected he was to sign it, but that Marks told him it would make no difference; that it was just as good as if he had, and if not he would make it good.

Evidence was also given, tending to prove that the plaintiff was aware, when he took Marks' guaranty, that it was the understanding of Lewis that Marks was to sign the note, instead of guaranteeing the collection.

When Lewis learned that Marks had not signed the note as one of the makers, he instituted a suit against the plaintiff in this action, (Daniel Sterns,) charging that the note was not to be used without Marks' signature, and that the plaintiff knew it when he took it; and he demanded judgment directing his own name to be canceled.    Having established his case to the satisfaction of the court, a decree was obtained directing his name to be canceled, and it was canceled accordingly.

The plaintiff then commenced a suit upon the note, against Hibbard, which was prosecuted to judgment and execution. After the return of the execution, *nulla bona,* he brought this action upon the guaranty, without giving notice of his failure to collect the note of the makers.

Proof was given, under objection, that the defendant took five or six hundred dollars of the money loaned to Hibbard upon the note, to apply on a demand he held against Hibbard, for rent.

There were various objections to the evidence and to the charge of the judge, which sufficiently appear in the opinion of the court.

The cause was tried before Justice BALCOM, at the Otsego circuit, in June, 1861, and a verdict given for the plaintiff, for $2147.50. The defendant's counsel having excepted to the ruling of the judge on the trial, the exceptions were ordered to be heard in the first instance at the general term.

*D. Pratt,* for the defendant.

*F. Kernan,* for the plaintiff.

MORGAN, J. The case shows that the plaintiff held a note for $1500, purporting to be made by *R. H. Hibbard* and *Theodore Lewis,* payable to the plaintiff with interest, one year after date ; on which was a written guaranty of collection, signed by *James Marks,* and expressed to be for value received. It also appears that the note was an accommodation note, made for the purpose of raising money, and that the plaintiff advanced the money upon it to R. H. Hibbard, for whose accommodation it was made. It also appears that Theodore Lewis, the accommodation maker, afterwards instituted a suit against the plaintiff, charging, in substance, that the note was to be signed by James Marks as joint maker, before it was to be used or delivered to the plaintiff ; and

that the plaintiff, when he took it with James Marks' guaranty, knew that Lewis had given no authority to negotiate the note without the joint signature of Marks ; and he therefore insisted that as to him the note was invalid. That suit proceeded to trial and judgment, resulting in a decree directing Lewis' name to be canceled. Immediately after, the plaintiff prosecuted the note against Hibbard and recovered a judgment, on which an execution was issued and returned *nulla bona*. This suit was then commenced against James Marks, upon his guaranty.

The judge charged the jury, that if Theodore Lewis signed the note in suit upon the understanding or agreement that it was not to be used unless Marks also signed it as joint maker, and Marks had knowledge of such understanding and agreement, at the time of his guaranty, the plaintiff was entitled to a verdict. But if there was no such agreement, or if Marks had no knowledge of it, then the defendant was entitled to a verdict. This proposition was excepted to by the defendant's counsel.

The principal ground upon which the defendant's counsel disputed this proposition was, that the plaintiff was required to communicate to Marks every circumstance calculated to influence him in entering into his engagement to guaranty the collection of the note. This, I think, assumes that Marks was ignorant of the fact that Lewis' name was not to be used unless Marks also signed the note as joint maker. But the proposition of the judge leaves it as a question of fact, for the jury to decide, whether Marks had that knowledge or not. Doubtless if Marks was ignorant of the circumstance, and it was known to the plaintiff, and if Marks contracted upon the supposition that Lewis' name was authorized, it would have been a fraud upon the surety sufficient to invalidate his obligation. But it is not sufficient to say that the plaintiff failed to inform him of the circumstance. It was sufficient that he was informed of it by the other parties to the note, and that he knew it when he entered into the guaranty. If the in-

formation had come from a stranger to the note, it might present a different question; but here the evidence shows that Marks obtained his knowledge from the parties themselves; and he negotiated the note to the plaintiff, who had obtained his information in the same way. It is now claimed that although Marks knew the fact as well as the plaintiff, good faith required that the plaintiff should disclose it. It was, however, as much the duty of Marks to inform the plaintiff as it was the duty of the plaintiff to inform him ; and as they both knew of it, there is no such injury inflicted by one upon the other as will relieve him from the consequences of his engagement.

It is, however, insisted by the defendant's counsel that Marks did not undertake for the default of *one* of the makers alone, but for both, and that when Lewis' name was stricken out, his obligation as guarantor was thereby discharged.

The short answer to this is, that Marks knew, when he signed the guaranty, that Lewis' name was unauthorized, and that it was subject to be stricken out for that reason. And where the surety knows that the undertaking of the principal is liable to be defeated, he must be considered as entering into his obligation with reference to such a contingency. And the guarantor may be held, though no suit could be maintained upon the original debt, for the guaranty may have been required for that very reason. (1 *Pars. on Cont.* 568.)

But if we look at it in another aspect, we must come to the same result. It must be assumed that the note was not in fact the note of Lewis, but only of·Hibbard ; for this is the legal effect of the judgment of this court in ordering his name to be striken out as unauthorized. In legal effect, therefore, Marks only undertook for Hibbard's insolvency. Knowing the facts, he was bound to know the law, and that the note could only be treated as the note of Hibbard. In the absence of fraud, which cannot be imputed to the plaintiff in this connection, the obligation of Marks is to be regarded as valid, notwithstanding Lewis' name in form appeared upon

the note as one of the makers. If the plaintiff was a *bona fide* holder without notice, there could be no question but that the guarantor's engagement would cover all defects in the note itself, as well as the maker's insolvency. It is in that respect like the obligation of an indorser, which is available, notwithstanding the signature of one of the makers is a forgery. (22 *Barb.* 516.) And knowledge of the holder that such a defense exists, where it is also known to the guarantor, does not deprive him of the right to rely upon the guaranty; because it is taken, perhaps, for that very reason.

Another objection to the recovery in this case is, that the liability of the guarantor is not absolute, but conditional and contingent, depending upon the *plaintiff's* efforts and failure to collect the note in due course of law; and hence that no action can be maintained upon such an obligation, until the guarantor had notice of the facts upon which his liability depended.

Considering the numerous cases in this state of suits upon guaranties of this nature, it is somewhat remarkable that an objection of want of due notice has not been raised, until now; and that no authorities are cited in support of the proposition, except one manuscript decision, made in a recent case at special term.

I think it may be assumed that the duty of giving notice, in such a case, has not heretofore been thought necessary by the profession in this state. And as it is not one of the *express* provisions of the contract, it is to be *implied*, if it exists at all.

Even where the law requires notice to an indorser, it may be waived by the parties. The engagement of the indorser is strictly conditional; and when written out in full, the *condition* is expressed in the obligation. It is therefore strictly a matter of contract that he will not be liable, unless he has due notice of the default of the principal.

As it has not generally been thought requisite, in the case of a guaranty of collection, that notice of default should be

Sterns *v.* Marks.

given, it would, I think, be going too far to *imply* a contract that such a notice should be given, as a condition of the guarantor's liability.

When we look at the written undertaking in this case, we find that that is absolute, that the note is collectible by due course of law. The liability of the guarantor is fixed by the failure of the creditor to enforce collection. The fact of such failure does not lie exclusively in the knowledge of the creditor. It is not, therefore, such a duty of the creditor to give notice to the guarantor, that it may not be omitted with safety to the surety; and as it is not expressly contracted for, there is no strong necessity to incorporate it, by implication, into the agreement of the parties. There are cases where a reasonable construction of the contract requires notice to be given of the plaintiff's failure or inability to do an act upon which the defendant's liability depends. *Morris* v. *Wadworth* (17 *Wend.* 112) is such a case. But the act, upon which the defendant's liability depended in the case at bar, was not the act of the plaintiff, or his own insolvency or inability to perform it. The liability depended upon the insolvency of a third person, to be ascertained, by proceedings at law, which are open to the inspection of both parties. It was the duty of the plaintiff to set the proceedings afloat which were to determine the question of the defendant's liability. But the *event*, upon which the defendant's liability depended, was not the act of the plaintiff, in such a sense as to require him to communicate it to the defendant. It did not depend upon his own option or inability, and was not therefore peculiarly within his knowledge, within the meaning of the rule requiring notice.

Unless the guarantor stipulates for notice, in such a case, I think it is not to be *implied* from the contract of guaranty. And such, I think, is the result of the authorities, in England and this state, as was shown by Judge Cowen in *Douglass* v. *Howard*, (24 *Wend.* 48 *to* 53. *See also,* 3 *Comst.* 212, 213.)

The defendant objected to the judgment roll, containing the judgment in the suit of Lewis against the present plaintiff, directing Lewis' name to be cancelled as one of the makers of the note, on two grounds: 1st. Because Marks not being a party, was not concluded by it; 2d. Because it established a fraud against the plaintiff therein, as against Lewis. But it was not offered for either of the purposes pointed out by the objections; but to conclude the plaintiff himself, and to establish the fact that Lewis was legally discharged as one of the makers of the note. And it was expressly ruled by the judge, that notwithstanding the judgment, it was still necessary for the plaintiff to establish by extrinsic evidence the facts upon which the decree was made. And it was doubtless the proper proof, to show by the judgment, that as to Lewis the note could not be collected. Without the judgment of a competent court discharging Lewis from his obligation as one of the makers of the note, it would have been very questionable whether the plaintiff could rely upon proof of the facts which led to the judgment, in an action against the guarantor. He would have been told that due diligence required him to sue Lewis and test the question in a court of law. I think the judgment in this case had the same legal effect upon the rights of the parties as though the plaintiff had commenced a suit upon the note, against Lewis, resulting in a jugment discharging him from his liability on the note.

As to the question of fraud, it is enough to say that the judgment did not necessarily establish any fraud of which Marks could take advantage, and for whose benefit alone the suggestion is now made.

I am also of opinion that it was competent to show that Marks expected, and actually received, a portion of the proceeds of the note to apply on his demand against Hibbard. It was a part of the transaction, and furnished Marks an additional motive to take the risk of the guaranty.

BACON and ALLEN, Justices, concurred.

MULLIN, J. was of opinion, that the evidence of the former judgment, as well as that of payment of money to Marks, was received in a way calculated to mislead the jury. He thought it was not sufficiently restricted by the judge; and for this reason was in favor of a new trial.

New trial denied.

[ONEIDA GENERAL TERM, January 7, 1862. *Bacon, Allen, Mullin* and *Morgan*, Justices.]