Mayor of City of Lexington v. Long.

————◦◦◦————

THE MAYOR, &c., OF CITY OF LEXINGTON, Respondents, v. LONG, Appellant.

1. In a proceeding to widen a street, as provided in the act incorporating the City of Lexington, (Acts 1844–5, p. 162, § 12,) the fact that the mayor is the owner of a lot on the street sought to be widened, does not disqualify him from the performance of the duties assigned to him as presiding judge of the mayor's court before which the proceeding is held.
2. All the owners of lots on a street sought to be widened are not required to join in appeal from the mayor's court, whether they acquiesce in the verdict of the jury or not. The charter allows any person interested, who considers himself aggrieved by the verdict, to appeal.
3. The question for the jury to determine in a proceeding to widen a street is, what damage the person whose lot is taken would sustain by the proposed alteration of the street; and the amount of benefit to lot owners on the other side of the street should not be taken into consideration in assessing such damage to the person, a part or whole of whose lot is taken.

*Appeal from Lafayette Circuit Court.*

This was a proceeding commenced by the respondent against the appellant, together with a number of others, in the mayor's court of the city of Lexington, in which action the city, under and by virtue of certain ordinances, sought to widen South street sixteen feet, by taking a part of the lots of appellant and the other owners on the north side of said street alone. A part of defendants appeared in the mayor's court and made a motion to dismiss the proceeding, because the mayor, Silas Silver, was a party to the action, being owner of a lot on the south side of said street and summoned as one of the defendants with appellant and others. To avoid this objection, the attorney for the city

dismissed as to Silas Silver. The case was tried in the mayor's court and the jury made their verdict, in which they assessed damages to only a part of defendant's owning lots on north side of the street, but assessed damages to appellant, Long; they assessed various sums as benefits to persons owning lots on south side of the street, (among whom was Silas Silvers,) in sufficient amount in the aggregate to meet the damage assessed to lot owners on the north side of street.

The appellant Long, with others, prayed for an appeal to the circuit court of Lafayette county. The mayor required each defendant to take his separate appeal. The appellant appealed, and, in the circuit court, moved the court to issue a writ of summons to bring in all the other defendants before that court, in order to give them an opportunity of uniting with or refusing to join in the appeal. The circuit court ordered the writ to issue. The defendants, owning lots on south side of the street, appeared and moved the court to quash the writ of summons, which motion was sustained.

*Ryland & Son*, for appellant.

I. The mayor, Silas Silver, had no authority to sit as a court and try his own case, whether he be plaintiff or defendant, and most surely has no jurisdiction or authority to sit as a court and decide a controversy judicial, in which he is one of the plaintiffs and one of the defendants. Judgment in such case is a nullity. It is against every principle of right and justice, and the whole proceedings should be set aside. A party can not sit in judgment in his own case. (State v. Jion, 3 Mo., top pages, 124, 125.)

II. The court should not have quashed the writ of summons which was issued in this case. It was necessary and proper to bring all the parties again before the court, in order that the defendants might have the chance to unite in the appeal, or to refuse to do so; and that in the latter event appellant might sever and go on with her appeal alone.

III. The whole case, as appears from the record, was not tried on proper principles. The jury should have been permitted to have had the evidence before them in order to see how much the increased width of the street would benefit the lot owners on the south side of the street, as well as how much it would have injured those owning lots on the north side. This was denied, and consequently but half of the case was actually before the jury, or tried in the court below.

*Adams*, for respondent.

I. The law of this case is furnished by section twelve of the act entitled " An act to incorporate the City of Lexington," approved March 8, 1845, and the ordinances of the city passed in pursuance of that section. By the section referred to, each lot holder, where property is sought to be condemned, is a separate party to the proceedings, and the verdict as to each is several and not joint, and his appeal must necessarily be a separate matter of his own, and therefore the action of the circuit court was right in refusing to coerce the unwilling parties to join in the appeal. (McKee v. City of St. Louis, 17 Mo. 189; Coby v. Trustees of Williamsburg, 10 Wend. 665.)

II. The benefits resulting to lot holders on the opposite side of the street were not a proper subject of inquiry in this case. The rights of those lot holders had already been adjudicated and settled before the mayor. They had acquiesced in the verdict of the mayor's jury. No one but themselves had a right to complain. All the appellant can ask is to have her damages paid, whether they be paid out of the city treasury or by benefits, collected from other lot holders, is not material to her rights in this case. (17 Mo. 189; Garnett v. City of St. Louis, 25 Mo. 505; 10 Wend. 665; 4 Conn. 420; 8 Wend. 101; 3 Paige, 45.)

NAPTON, Judge, delivered the opinion of the court.

The maxim that no person should be allowed to act as a judge in his own cause, or a cause in which he is interested,

is founded on principles of natural justice, and is therefore enforced in the judicial systems of all civilized nations ; but it is a maxim which has its limits, and those limits are determined by the legislative department of the government. Its application may be carried to such refinements as, in the practical administration of justice, would produce the greatest inconvenience without being attended with the slightest benefit. We must therefore look to the statute law to ascertain where it is properly applied, and where its application is rejected.

By the charter of the city of Lexington, that portion of the body politic of the State, situated within certain defined limits, is incorporated by the name of "the mayor, councilmen and citizens of the city of Lexington," and by that name all the functions entrusted to it by the charter are to be exercised. By the twelfth section of the charter, the corporation is empowered to widen a street, and the form of proceeding is pointed out. The proceeding is directed to be instituted and conducted in the name of the corporation, and is necessarily a proceeding in which one party is styled " the mayor, councilmen, &c., of the city of Lexington," and the opposite party consists of those citizens who own property on the street proposed to be widened. This is the mode prescribed in the law, and if this mode cannot be adopted by reason of its conflict with established principles of right and justice, no other can be substituted, and the act is useless. If the mayor is to be regarded as a party plaintiff in such a sense as would, upon principles of natural equity, prevent him from acting as judge, and the function assigned to him in the charter is substantially a judicious one, the whole proceeding falls to the ground. But we take it, that the mayor is no more plaintiff in such a case than the circuit judge is plaintiff in every case wherein the State is on one side and one of its citizens on the other. The judge being one of the citizens of the State, may in State cases be said to have an interest on the side of the State, as in fact he is one of the persons composing the body politic called the

State; but every one sees that this is a refinement, tending to nothing but confusion and embarrassment, and producing no practical good whatever. We look to the statute law, to see where and in what cases the legislature thought a judge ought not to sit, and we do not undertake to interpose restrictions where the legislature has thought none to be necessary. Nor do we consider the mayor as a judicial officer, or as performing any judicial functions in the proceeding. His duties are administrative or executive—the jury is the body selected to perform all the judicial functions required. Hence the law requires them to be selected from the county outside of the corporation limits. The legislative power of the corporation first establishes the street, the mayor has nothing to do except to issue his precept to the constable, and the jury summoned assess the damages. He has no discretion whatever in the matter, nor has he any part assigned in the determination of any question of law or fact in the proceeding. The fact therefore that this officer was not only a nominal plaintiff, but was also a nominal defendant, being the owner of a lot on the street, and therefore required by the law to be notified of the proceeding, does not disqualify him from the performance of any duty assigned to him. What has his partiality or impartiality, his interest the one way or the other, to do with the result? The jury settle the case, and if any party is dissatisfied, an appeal lies. In this case we see how utterly groundless is the complaint of the appellant on this point, when we look at the result of the trial in the circuit court, where the verdict of a second jury awarded smaller damages than were given by the jury summoned by the mayor.

We do not think there was any error in quashing the writ of summons, requiring the appearance of all the persons who were interested, and who refused or neglected to appeal from the assessment of the mayor's jury. The defendant in the proceeding before the mayor had no joint interest in the subject of controversy, and therefore the twelfth section of the charter allows any person interested, who considers him-

self aggrieved by the verdict of the jury to appeal. Those who do not consider themselves aggrieved need not appeal. Nineteen out of twenty citizens living on a street proposed to be widened may be perfectly satisfied with the result of the proceeding; are they compelled to share the burthen and cost of an appeal, taken by the twentieth who is dissatisfied, and with whom the nineteenth has no interest in common whatever? The question is not whether all who considered themselves aggrieved might not join in the appeal, but whether those who were satisfied should be compelled to join. The effect of an appeal by one might, it is true, defeat the whole proceeding, and we see no objection to the joinder of all who feel dissatisfied with the verdict in the appeal, although their interests are entirely distinct. The proceeding is altogether statutory, and is not in the nature of an action at law or bill in chancery, but is to be governed by the act, and there is nothing in the charter which requires all the owners of lots on the street to be joined in an appeal whether they choose to acquiesce in the verdict of the mayor's jury or not.

Upon the trial in the circuit court, the appellant's counsel asked a witness "what he estimated to be the benefit to the lot owners on the south side of the street, by widening the street without taking anything from their lots and taking the whole sixteen feet from the north side." This question was not allowed to be answered, and an exception was taken to the ruling of the court on this point. The question to be decided by the jury was, what damages the appellant would sustain by the proposed alteration of the street. These damages had to be paid by the corporation, whether the advantages of the opposite lot owners were of no value or should greatly exceed the estimated damages assessed. It was of no consequence, therefore, to the appellant how much her neighbors across the street might be benefited, provided she was not injured, or, if injured, the injury should be fully compensated. The amount of benefits to the owners of lots on the one side of the street would have no tendency to show

the amount of damages sustained on the other side, and might, we can easily perceive, tend to erroneous conclusions. A lot owner on one side may have expended ten thousand dollars in buildings and other improvements, and the proposed change in the width of the street might be an advantage worth to him one thousand dollars, whilst the same change would only benefit the owner of a lot on the other side to the amount of one hundred dollars, or perhaps be an injury to him to that amount, because of the lot being entirely unimproved. Is the owner of the last named lot to be paid the thousand dollars where his injury is only one hundred dollars, merely because the owner of the opposite lot has been benefited to that amount? There would be no justice in such a course, and we think the question was properly excluded.

The fourth instruction given for the respondents was erroneous, but the jury disregarded it, or rather they found the appellant to be the owner of the ground proposed to be taken. It is therefore no cause for a reversal.

Judgment affirmed; Judge Ewing concurs. Judge Scott absent.