# Charleston.

COMMONWEALTH, USE OF BROWN, *vs.* JAMES H. FRY *et al.*

, January Term, 1871.

1. Where the condition of a bond provides for a single act to be done, the breach is well assigned in a declaration if it be in the words of the condition, or words which import the same thing. But where the condition of the bond requires many things, the omission of any one of which would constitute a breach, a particular breach should be specified in the assignment.

2. The assignment of breaches is the essence of the action on a sheriff's bond. The breach must be stated according to the facts, and with certainty and particularity, that the defendants may know what they are called upon to answer.

3. In an action on a sheriff's bond for failure to levy an attachment in a suit, the declaration must aver directly that a judgment was obtained in the suit, and the amount thereof; also that the property on which the sheriff was required to levy, was of some value, and that by reason of the failure to make a levy, the plaintiff sustains damages.

4. The process of attachment issued from the courts of this State, against the owners of steamboats navigating its waters, can be levied on such boats, and the courts have jurisdiction in such cases.

This case came from Kanawha county.

The case was determined here upon a demurrer to the declaration, and the questions arising therein appear in the opinion of Judge Maxwell.

*Smith* and *Knight* for the plaintiffs in error.

There was a demurrer to the declaration and each assignment of breaches, which was overruled. The assignments of breaches are bad.

1st. They do not allege that Brown executed a bond for

the attachment, with *approved* security. It might have been good and sufficient security in the estimation of the plaintiff, but the law required that it should be security, approved by the clerk or justice issuing the summons. The plaintiff in his declaration must make out a cause of action, and no cause of action was made, unless he made the allegation that a bond was executed with security, approved by the clerk. The allegation that the bond was executed with good and sufficient security, is not enough.

2d. They do not allege that the plaintiff ever obtained judgment against the Montgomerys. It might be inferred from the language of the declaration, that such a judgment was obtained, but inference will not do. The direct allegation should be made, and the allegation should show the amount of the judgment.

3d. The last assignment of breaches alleges that, deputy Slack did levy the attachment upon the boat, &c., but failed, and refused to take said boat, &c., into possession, but does not allege that he could have taken the property into possession, and detained the same in custody. When an officer is charged with failure to perform a certain act, the allegation must be followed by the further allegation that it was in his power to perform.

The affidavit upon which the attachment is founded is fatally defective. It does not state that the plaintiff's claim is believed to be just, nor a certain amount which the affiant believes the plaintiff is entitled to recover, or that process of execution on the judgment in the suit when it is obtained would be unavailing, or in fact, any ground for the attachment recognized by the statute. See Code of 1849, ch. 151, § 2;* the affidavit was appended to and made part of the order of attachment. It was the duty of the court to quash the attachment on inspection, ex-officio, without plea or motion. See *Mantz* v. *Hendley,* 2 Henning & Munford, p. 312.

The action of *Brown* v. *The Montgomerys,* was for a maritime tort, and the attachment against the boat, her apparel,

COURT OF APPEALS OF WEST VIRGINIA.        723

Jan'y Term,        Commonwealth, use, &c., *vs.* Fry *et al.*        1871.

tackle, &c., was essentially, and in fact, a proceeding *in rem*, and the circuit court of Kanawha county had no authority to issue such process or enforce such proceeding, and especially is this the case, if the attachment was issued under the 5th section of chapter 151, of the Code of 1849. Only courts of admiralty jurisdiction could exercise such power. See *The Moses Taylor*, 4 Wallace, p. 411, and *Hine* v. *Trevor*, 4 Wallace, p. 556. It will be noticed that a court of admiralty had jurisdiction of the marine tort in the case of *Brown* v. *The Montgomerys*, by virtue of the act of Congress of September 24th, 1789, and not by virtue of the act of Congress of February 26th 1845, and the restriction in the act of 1799, retaining exclusive jurisdicdiction in the district court, applies to the case at bar. It is claimed by plaintiffs' counsel, that the State courts have the right to issue attachments against steamboats in aid of, and ancillary to, a suit in person and against the owners; but it is submitted on the authority of the cases before referred to, that under such attachment the boat itself cannot be seized and sold. Boats are subject to liens and to priorities thereof, which cannot be settled and adjudicated under any such proceeding, and if they could, the State courts have not the jurisdiction to direct a seizure and sale of the boat itself.

*Swann* and *Hogeman* for the appellees.

The questions growing out of the instructions brought up by the bill of exceptions in this case resolve themselves into two, viz:

1st. Can the common law courts take jurisdiction of actions against the owners of vessels for marine torts, or is the jurisdiction of the admiralty courts in this respect exclusive? and,

2d. Was the attachment sued out in the case of *Brown* against *Montgomery*, directing the sheriff to levy on the steamer "Greenwood," such a process as, under the act of congress of 1789, could only be issued by the admiralty courts, and such as the sheriff was therefore not required to execute.

. Neither of these questions are new. They have already been adjudicated by the courts of the States and of the United States.

But taking the first as an original proposition, when considered in connection with the clause of the act of Congress referred to, which saves to suitors, in addition to the remedy afforded by the act, a common law remedy where the common law is competent to give it, the question admits of no dispute. Indeed the question so much controverted and never settled until decided in the case of the "Genesee Chief," hereafter cited, has not been, have the common law courts jurisdiction of actions for marine torts, but on the *concessum* that this proposition is true, have the admiralty courts jurisdiction over marine torts?

The object of the act of Congress was not to deprive suitors of the remedy which they had at common law, but to afford a more speedy, safe and certain method of redress for cause of action arising upon the high seas, and upon the navigable waters of the country by a proceeding *in rem*, which enabled the aggrieved party to imparl the vessel itself without incurring the cost and inconvenience of discovering its owners. This proceeding was unknown at common law. And yet, if the aggrieved party preferred the other more expensive and troublesome method, he was not deprived of it, but was left to his choice.

The jurisdiction of the two courts over the subject matter is concurrent, but the mode of asserting and enforcing it is different. In the one case the proceeding is *in personam* against the owner or master for damages to be made out of his estate generally; in the other it is *in rem* against the vessel *eo nomine* to recover from it for the wrong done. So the manner of trial is different; at common law either party can claim the right of trial by jury, whilst in admiralty he must submit his case to the adjudication of a single judge.

But this jurisdiction has been repeatedly asserted and exercised by the courts of common law, and notwithstanding the jealous and grasping efforts of the admiralty courts to

secure to themselves the exclusive cognizance of all causes and matters arising upon the seas and navigable waters of the country, under their general admiralty and maritime powers, they have been forced to acknowledge the concurrent jurisdiction of these courts. 18 Johnson, p. 292; 14 Johnson, p. 288; 20 Howard, p. 598. The question of jurisdiction has never been directly before them, but the courts of Virginia have nevertheless recognized the right to take cognizance of trespasses committed upon the navigable waters of the State by entertaining actions against carriers for losses and injuries. The same may also be said of the courts of other States. 3, Munford, 239; 4 Munford, 444; 18 Ohio, 375; 3 Murphy, N. C., p. 149; 1 Jones, N. C., p. 211; 6 Jones, N. C., p. 207.

The second proposition appears to be equally clear. If the circuit court of Kanawha had jurisdiction of the matters involved in the case of *Brown* against *Montgomery*, it could effectuate and enforce its jurisdiction in the same way in that as in all other actions. The 2d section of chap. 151 of the Code of 1849, provided that if, in a certain class of cases therein mentioned, it should appear on affidavit that the defendant is removing, or intends to remove, his estate, or the proceeds thereof, out of this State, so that execution on a judgment, when it is obtained, is unavailing, an attachment may forthwith be issued. The attachment at bar was issued under this section.

This is not the original process in the case, but subsequent to and in aid of the original, to wit: To make availing any judgment which might thereafter be recovered when a *fieri facias* is issued thereon. The attachment was not issued to compel an appearance, because that had been secured by the service of the original writ on the defendants in person, but wholly as an incident of and ancillary to the original process. Attachments of this class are common and within the experience of every lawyer. But in this case, because it was to be levied upon a steamboat, it is said to be void. This is a novel proposition, and it is perhaps the first time

that a court has been asked to discriminate between steamboats and every other species of personal property when the kind of property subject to levy on *fieri facias* is considered. As well might it be said that before a judgment creditor of a judgment debtor, whose whole property consists of steamboats, can make his judgment, he must resort to admiralty to subject the vessel. It cannot be that a court of common law is so inefficient. The position of the appellants surrounds steamboats with a legal protection wholly inconsistent with the purpose of the act of Congress, which, dissatisfied with the easy process of our common law courts, sought to introduce the more rigorous process of a court of admiralty. But like attachments founded on like circumstances have been sustained. 7 Humphreys, 210; 4 Wal., 571; 20 How., 602.

In the case referred to in 7 Hum. Rep., an attachment was issued somewhat similar to the one now before the court, and on an affidavit like it. It was to be levied on a steamboat. On a motion to quash, the court sustained the attachment. To be sure, the question of jurisdiction was not considered, but the fact was recognized. In that case the attachment preceded the original writ.

For these reasons, the judgment of the court below should be affirmed.

MAXWELL, J. This was an action in the name of the *Commonwealth of Virginia, for the use Brown,* against *Fry,* sheriff of Kanawha county, and his securities, to recover damages for the failure of the said Fry and his deputy, Slack, to execute an attachment, sued out in a pending suit, in favor of the said Brown, against John and G. W. Montgomery.

There was a demurrer to the declaration and to each assignment of breaches, which was overruled, and the first cause of error assigned here is, that the demurrer ought to have been sustained.

The bond sued upon is described in the declaration, from

which it appears that it is conditioned as required by law for a sheriff's bond; that the said Fry should faithfully discharge the duties of his office of sheriff of the county of Kanawha, for the term of two years.

The rule is, where the condition of the bond provides for a single act to be done, the breach is well assigned if it be in the words of the condition, or words which import the same thing. But where the condition of the bond requires many things, the omission of any one of which would constitute a breach, a particular breach should be specified in the assignment. 1 Chitty's Pleadings, 326; *The People* v. *Brush*, 6 Wendell, 454. The assignment of breaches is the essence of the action on a sheriff's bond. *Ward & Ellzy* v. *Fairfax Justices*, 4 Mun., 494; *Woodson* v. *Johns*, 3 Mun., 230.

The breach must be stated according to the facts, and with certainty and particularity, that the defendants may know what they are called upon to answer.

There are four assignments of breaches in the declaration in this case. They all aver either a failure to levy the attachment, or a failure to take the property into possession, after it was levied upon, so that when final judgment was obtained against the said Montgomerys, there was no property found within the bailiwick of the said sheriff on which to levy the execution which issued on the said final judgment.

There is no direct averment in any of the assignments of breaches, that any judgment was ever obtained, nor is there any sum stated, even by way of recital, for which judgment was obtained.

There is no averment that the property on which the sheriff and his deputy were required to levy, was of any value.

It seems to me, that inasmuch as there is no averment in any of the assignments of breaches, that judgment was obtained for any sum, nor that the property to be levied upon was of some value, nor that the plaintiff, by reason of the failure to make such levy, sustained any damage, the as-

signments are all fatally defective, and the demurrer should have been sustained. If the plaintiff obtained no judgment for any sum, he could sustain no damages by the failure of the sheriff to levy the attachment, and if the property to be levied upon was of no value, he could sustain no damage, although he might have obtained a judgment. *Perkins* v. *Giles*, 9 Leigh, 397.

In this view of the case, it is not necessary to decide any other questions in it, yet, as a guide to the parties hereafter, it may be well enough to say, that there can be no doubt about the jurisdiction of the court in the case of *Brown* against *The Montgomerys*.

The judgment complained of will have to be reversed, with costs to the plaintiffs in error, the demurrer sustained, and the cause remanded, with leave to amend the declaration, if the plaintiff wishes to amend.

. The other judges concurred.

JUDGMENT REVERSED.