# WHEELING.

## WHEELING v. BLACK et als.

Submitted September 8, 1884.—Decided December 6, 1884.

1. Where a declaration on a bond with collateral condition contains a general and also special assignments of breaches, the defendant may properly demur to the declaration and to each assignment of breaches. (p. 273.)

2. If in such case the demurrer is simply to the declaration and the latter contains matter sufficient to maintain the action, the demurrer must be overruled, although some of the breaches assigned are insufficient, and the grounds of such insufficiency are specified in the demurrer. (p. 273.)

3. It is a general rule in actions on such bonds, that the breaches will be sufficiently assigned by negativing the words of the condition. (p. 273.)

4. This general rule is universal where the condition provides for a single act to be done, but where it provides for many things of different kinds to be done, the omission of any one of which would constitute a breach, it is usual and proper to make special assignments of the breaches of each kind or class of such acts. But it is not necessary to set forth each single act or the several particular sums of money received constituting the breaches. (p. 274.)

5. Under our statute—sec. 46 of chap. 160, Acts of 1882—providing for the filing of a bill of particulars of the plaintiff's claim, the necessity for special assignments of breaches is to a great extent if not entirely obviated. By filing such bill of particulars with his declaration the plaintiff may dispense with such special assignment in most if not in all cases. (p. 274.)

6. Where by the charter or organic law of a municipal corporation the officers are to be elected for a term of years specified, and the charter or ordinances contain no restrictive clause or words, the officers continue to hold and exercise their offices, after the expiration of such specified term, until they are superseded by the election of other officers in their places. (p. 275.)

7. B. having been elected by the council of the city of Wheeling collector of said city for the unexpired portion of the current term of said office, and having continued to hold and exercise the duties of said office after the expiration of said current term and until his successor was elected and qualified. HELD:

    I. B. legally continued to hold and exercise the duties of said office until his successor qualified; and

    II. The sureties on the official bond of B. are bound to the same extent for any default while thus in office after, that they are for defaults committed before, the expiration of the current term specified. (p. 277.)

8. Special assignments of breaches being merely in the nature of bills of particulars or notices of the character of the plaintiff's demand, no such assignment can be held bad on demurrer if it contains any single averment constituting a breach of the condition of the bond, even though it contain other matters which do not constitute such breach. The proper mode of reaching such irrelevant matters is to move to have them stricken out, or to object to the introduction of evidence to prove them. (p. 278.)

9. In an action in which a municipal corporation is plaintiff, a subpœna *duces tecum* may be awarded for the production of a document in the possession of the defendant on the affidavit of members of the council of such corporation having peculiar knowledge of the importance of such document as evidence for the plaintiff. (p. 279.)

10. On the facts appearing, a motion by the defendant for a change of venue was properly overruled. (p. 279.)

11. An application for a change of venue should be made at the earliest opportunity. (p. 280.)

12. Our statute—sec. 1, chapter 62, Acts 1881, declaring that no judge or officer of a court shall be disqualified from performing his official duties in any cause by reason of the fact that he is a citizen and tax-payer of the county, district, or municipal corporation interested in or a party to such cause, is constitutional. (p. 280.)

13. A municipal court of a city will take judicial notice of the ordinances of such city, and they need not be pleaded. (p. 281.)

14. When a collector of a city collects from the tax-payers by virtue of his office interest on taxes, he is in no position to assert that said interest was illegally collected; and in an action brought against him for such interest by said city he will not be permitted to defeat the same by alleging such illegal collection. (p. 281.)

15. A city or other collector of public taxes, which bear interest, is liable for interest accrued on said taxes ; and if he fails to account for the same, and instead of doing so he deposits the proceeds of such taxes in bank and takes to his own use the interest paid by the bank on such deposit, he and his sureties will be liable to said city for the specific interest so received by him from the bank on such proceeds. (p. 283.)

16. In an action on a bond with collateral condition, to which the only plea is conditions performed, an instruction, which assumes that the defendant, a tax-collector, may have received interest on the taxes collected by him or their proceeds which it was his duty to pay to the plaintiff, and places the burden of proving that he has not paid or accounted for said interest on the plaintiff, is erroneous and was properly refused. (p. 285.)

17. An instruction is erroneous which tells the jury, that, in order to recover for items omitted in a settlement, the plaintiff must not only prove that there was such omission, but that it was fraudulently procured, or made unintentionally and through mistake, and that in the absence of any evidence of the circumstances attending the settlement, the jury cannot infer the existence of such fraud or mistake ; and especially is it so, when there is evidence in the case tending to show that such omission was caused by the suppression of facts on the part of the defendant which it was his duty to disclose. (p. 286.]

Statement by SNYDER, JUDGE :

Action of debt on the official bond of George Q. Black as collector of the city of Wheeling, brought May 19, 1879, by said city against said Black and W. H. Woodward, R. A. McCabe, B. M. Eoff and T. H. Reed his sureties on said bond. The action was commenced in the municipal court of Wheeling and was, September 20, 1880, upon the motion of the defendants, removed therefrom to the circuit court of Ohio county, in which court it was docketed and by consent ordered to be proceeded in there, in all respects, as if it had been originally brought in that court.

At the March rules 1881, the plaintiff filed an amended declaration. The bond sued on is in the penalty of $30,000.00, dated August 25, 1874, and payable to the city of Wheeling. Its condition is as follows:

"The condition of the above obligation is such, that whereas, the above bound George Q. Black was, on the eleventh day of August, A. D. 1874, duly elected collector

of the city of Wheeling by the council of said city for the unexpired portion of the current term of said office and hath accepted the same :   Now, if the said George Q. Black shall well and truly account for and pay into the treasury of the said city, at the time or times which are or may be prescribed by the council of said city, all taxes which shall in the year 1874 be levied and assessed on the personal property and on the real estate and tithables in said city, and also all water rents assessed or due while he is such collector or which shall be placed in his hands for collection, and all taxes and assessments which it is or may be made his duty to collect, and shall in like manner account for and pay into the treasury of said city or into the hands of a receiver of said city, or to such person or persons as may be entitled to receive the same, all moneys which may come into his hands under or by color or pretense of his office, and shall do and perform all things required of him as such collector by the ordinances of said city, and shall in all things diligently, honestly and faithfully discharge the duties of his said office, then the foregoing obligation shall be void, or otherwise to be and remain in full force and virtue."

The declaration, which occupies twenty-five manuscript and over fourteen printed pages of the record, is too long to be inserted here especially as it would subserve no useful purpose to do so.   Only a general statement of its nature and purport will be given here, and the portions assailed as insufficient will be more particularly noticed hereafter in the consideration of the demurrer thereto.

It contains but a single count, and after declaring on the bond in the usual form and setting forth its condition in full, it avers that the city of Wheeling, the plaintiff, had on April 20, 1870, passed an ordinance consolidating the offices of "collector of assessments" and "collector of water rents" and creating the office of "collector of the city of Wheeling," conferring upon the latter the duties and liabilities theretofore pertaining to the two former offices as then prescribed by the laws and ordinances of said city, and that it was provided by an ordinance of said city then in force that the term of office of each of said first mentioned officers should continue until his successor should be elected and qualified,

that the successor of said Black as such collector, qualified on September 14, 1875, that the said current term of office of said Black as collector continued until the said day, and that as such collector he was charged with and assumed the duties of collecting, accounting for and paying to the plaintiff all taxes levied and assessed within and for the year 1874, for the use of said city on the real and personal property, tithables and water rents of and within said city, that taxes were levied and assessed within said year on the real and personal estate and tithables in said city for a large sum, to-wit: $100,000.00, and for water rents another large sum, to-wit: $60,000.00, that other water rents, to-wit: $60,000.00, were due while he was such collector and that other water rents, to-wit: $60,000.00, were placed in his hands for collection while he was such collector. Then follows a general and eight special assignments of breaches of the condition of said bond. The general assignment, of course, simply avers that the said Black failed to do and perform all or any of the duties and obligations mentioned in the condition of his bond. The demurrer was sustained as to the eighth special assignment of breaches and the second was subsequently stricken out on the motion of the plaintiff. These two assignments, therefore, need not be further noticed.

The first special assignment is to the effect, that the said Black during the time he continued in office as collector, to-wit: from August 25, 1874 to September 14, 1875, received by virtue of his office on account of the plaintiff, divers sums of money, to-wit: $160,000.00, which it was his duty to account for to the plaintiff, and which he wholly failed and neglected to do.

The general purport of the third special assignment is, that for the year 1874, taxes to the amount of $49,717.98 were assessed on the real and personal property and tithables of the city and placed in the hands of said Black, and that, by virtue of his office and certain ordinances therein mentioned, it was his duty, at least once in every two weeks, out of the first collections made by him, to make deposits in the Bank of Wheeling to the credit of List and Davenport, commissioners, until said deposits amounted to $36,000.00, and then on every second Friday since his last payment, to pay

into the treasury of the city his collections and to account
for and pay into the treasury on or before November 1, 1875,
the whole of said $49,717.98 not required to pay said
$36,000.00; and that he wholly failed to make said deposit or
pay to the plaintiff or into the treasury the said $49,717.98,
or any part thereof.

The fourth special assignment is, in substance, that for the
year 1874, the list of water rents was placed in the hands of
said Black for collection amounting to the sum of $49,272.09;
that by virtue of his office and ordinances therein mentioned
it was his duty to collect and account for and pay said sum
into the treasury of the city on or before November 1, 1875,
and that he wholly failed to pay or account for said water
rents or any part thereof.

The fifth special assignment is very long, but the purport of it
in brief is, that the taxes and water rents for the year 1874,
which it was the duty of said Black to collect and account for and
pay over at the times and in the manner specified in the third and
fourth special assignments, he failed to pay over at the times
he ought to have done and was required to do, but after
making said collections he wrongfully retained for his own
use the moneys which he should have deposited in the Bank of
Wheeling, for a long time, to-wit, six months; that he so re-
tained $30,000.00; that, although he did after so retaining
said money pay said $36,000.00 into said bank, he wholly
failed to pay, at the time of each payment, all that he had
theretofore collected for the city and then in his hands, but
retained to his own use at the time of each payment sums
which aggregated $30,000.00, and that after paying said
$36,000.00, he did not pay his collections into the treasury, at
the times he was required to do so, the whole amount of taxes
and water rents then due and in his hands, but retained to
his own use for a long time, to-wit, from November 1, 1874,
to November 1, 1875, a large part of said taxes and water
rent to-wit, $30,000.00, and of this last sum he still retains
and refuses to pay a large sum to-wit, $10,000.00.

The sixth special assignment is to the effect, that during
the time said Black was in office, between August 25, 1874,
and September 14, 1875, he, under color and pretense of his
office, received as collector divers sums of money as interest

on the taxes assessed on the real and personal property and tithables and water rents of the city for the year 1874, which he deposited in the Exchange Bank of Wheeling, amounting to a large sum, to-wit, $5,000.00, and it thereby became his duty as collector to pay said interest to the plaintiff; never-. theless, he wrongfully appropriated said sums to his own use and has refused and neglected to pay the same or any part thereof to the plaintiff; and

The seventh special assignment is the same as the sixth, except that it avers the said Black as collector received and collected $5,000.00 as interest on taxes and water rents from the tax-payers of the city and failed and refused to pay the same or any part thereof to the plaintiff, as it was his duty to do.

The declaration avers in conclusion, that wherefore the said Black did not in all things diligently, honestly or faithfully discharge the duties of his said office according to the form and effect of said condition of his bond, and that by reason of the breaches set forth the plaintiff has sustained great injury and loss, to-wit, $30,000.00, and that by reason of said breaches the said bond became forfeited and an action has accrued to the plaintiff to demand from the defendants the said sum of $30,000.00, yet, &c., &c.

The defendants prayed oyer of the bond and demurred to the declaration and each assignment of breaches of the condition thereof, which demurrer the court overruled except as to the eighth special assignment of breaches as to which it was sustained as before stated. The defendants also pleaded conditions performed on which plea issue was joined and filed an account of sets-off and five special pleas in writing which latter on the demurrers and objections of the plaintiff were rejected and disallowed by the court.

On motion of the defendants and by the order of the court the plaintiff filed a bill of particulars of its claim against the defendants.

In September, 1883, a trial was had by jury and a verdict returned in favor of the plaintiff for $2,464.52, which verdict the defendants moved the court to set aside, but the court overruled said motion and entered judgment for said sum found by the jury.

The defendants offered no evidence on the trial and all that adduced by the plaintiff is certified in the record before us. A number of exceptions were taken by the defendants to rulings of the court, and to have those rulings reviewed they brought this writ of error.

*R. G. Barr* and *H. M. Russell*, for plaintiffs in error.

*W. Erskine* and *W. P. Hubbard*, for defendant in error.

SNYDER, JUDGE:

When the declaration, although it contains but a single count, assigns several breaches, as was done in this case; it is proper to demur to the entire declaration and to each assignment of breaches; for, if the demurrer is merely to the declaration and it contains matter sufficient to maintain the action, the demurrer must be overruled, even when the breaches assigned are defective or insufficient, and this will be so notwithstanding the general demurrer states as special causes therefor such defects and insufficiencies of the breaches assigned. *Henderson* v. *Stringer*, 6 Grat. 130; *Wright* v. *Michie*, Id. 354.

Whether or not the circuit court erred in overruling the general demurrer will necessarily depend entirely upon whether the general or any of the special assignments of breaches are sufficient. If any one of these is well assigned, that would show a forfeiture of the bond and the right to maintain this action. It will, therefore, be more convenient to notice first the demurrers to the several assignments of breaches of the condition of the bond.

Several objections are alleged to the general assignment. It may be stated as the general rule, especially in this State, as inherited from the State of Virginia, that the breaches will be sufficiently assigned by negativing the words of the condition of the bond sued on.—*Branch* v. *Randolph*, 5 Call 546; *Craighill* v. *Page*, 2 H. & M. 446; *Hughes* v. *Smith*, 5 Johns. 173; *People* v. *Brush*, 6 Wend. 456; 1 Chitty Pl. 612; 2 Sawnd. 181; *Martyn* v. *Cline*, 83 Eng. C. L R. 681.

If the breach is assigned in words equivalent to those in the covenant or condition it will be sufficient.—*Smith* v. *Lloyd*, 16 Grat. 295; 3 Rob. Pr. 596.

35

This rule is universal when the condition of the bond provides for a single act to be done; but where it provides. for many things of different kinds to be done, the omission of any one of which would constitute a breach, it is usual and proper to specially assign breaches of each kind or class of such acts. But it is not necessary or even proper to set forth each single act or the several particular sums of money received constituting the breach, as such particularity would lead to too great prolexity. *Albany Dutch Church* v. *Vedder*, 14 Wend. 165; *Dickinson* v. *McCraw*, 4 Rand. 158; *Allison* v. *The Bank*, 6 Rand. 204; *Commissioner* v. *Fry*, 4 W. Va. 727; 3 Rob. Pr. 596.

The reason of the rule and also of the exceptions to it, is answered by doing that which is necessary to give the defendants reasonable notice of the complaint alleged against them. Where the breach consists of a single act or a series of acts of the same nature, a general assignment in the words of the condition is sufficient. But where the contract or bond provides for the doing of divers acts of various kinds and at different times, any one of which would constitute a breach, a general assignment may or may not give sufficient notice to the defendants, and whenever the latter is the case, the common law rules of pleading require special assignments such as will apprise the defendants of the plaintiff's demand.

I have thus stated what I understand to be the general rule and its modifications; still, it seems to me, that our statute dispenses with any necessity for resorting to any other than a general assignment of breaches. It provides that, "In any action or motion, the court may order a statement to be filed of the particulars of the claim, or of the ground of defence; and if a party fail to comply with such order, may, when the case is tried or heard, exclude evidence of any matter not described in the notice, declaration or other pleading of such party so plainly as to give the adverse party notice of its character."—Section 46 chapter 130 Code, p. 625; and section 46, chapter 160 Acts 1882 p. 550.

Under this statute, the notice, required by the assignment of special breaches at common law, may be given by the filing of a statement of the particulars of the plaintiff's claim;

and thus to a great extent, if not entirely, the necessity of special assignments of breaches may be dispensed with in declarations on bonds with collateral conditions. By filing such statement the object of the law is complied with, that is, notice is given to the defendant of the plaintiff's demand, in a more simple form and equally certain, without the prolixity of special assignments of breaches.

In actions on policies of insurance the legislature, by chapter 66, Acts of 1877, extended the provisions of this statute with the evident purpose of avoiding the difficulties above indicated. And as such actions are very similar to those to which the present action belongs, the rules applicable to the one class bear directly on those in the other. See on this subject, as to the proper interpretation of the said act of 1877, as well as the statute above quoted, the opinion of this Court in *Cappellar* v. *Ins. Co.*, 21 W. Va. 576.

In that case the Court, in speaking of section 4 of chapter 126 of Code, which is of the same character as the Act of 1877 and section 46 of chapter 130, just mentioned, says, the bill of particulars or set-off with the plea, "if defective, could be taken advantage of by the opposite side not by demurrer, but only by moving to exclude the evidence from the jury which might be offered to sustain such imperfect bill of particulars or account, and that such bill of particulars or account constituted no part of the pleadings in the case."—21 W. Va. 593, *Choen* v. *Guthrie*, 15 *Id.* 113; *Abell* v. *Ins. Co.*, 18 *Id.* 412; *Smith* v. *Townsend*, 21 *Id.* 486.

In the case before us the record shows that the defendants availed themselves of said statute, and on their motion the court required the plaintiff to file a more particular statement of its claims which it did, and no motion was made to exclude evidence on the trial because the defendants were surprised or not sufficiently informed by the pleadings of the character of the plaintiff's demand.

But it is claimed that the demurrer to the general assignment should have been sustained, because it avers that the term of the defendant Black, which was current at the time of the execution of his bond, continued until September 14, 1875. The claim is that the term of office of Black expired two years after February 1, 1873, the date of the election of

his predecessor whose unexpired term he was elected to fill. Assuming that the city ordinances, referred to in the declaration, do not extend or limit the term of office of Black as fixed by the statute and general law on the subject, the demurrer properly presents the question whether his office and liabilities terminated on February 1, 1875, two years after the election of his predecessor, or on September 14, 1875, the date at which his successor qualified.

By the Act of March 3, 1870, amending the charter of the city of Wheeling, it is provided: "That the mayor, city clerk," &c., * * and "all other officers deemed necessary by the city council, shall be elected by the council for the term of two years."—Section 2, chapter 101, Acts 1870, page 106.

The declaration, as we have seen, avers that the term of office of the defendant, Black, was to continue "until his successor should be elected and qualified." Assuming, then, that the question must be determined alone by the true construction of this statute, did the term of Black expire two years after the election of the officer whose unexpired term he was elected to fill, or did it continue until his successor was elected and qualified?

Judge Dillon in his work on municipal corporations, says:

"When, in the charter or organic law of a corporation, there is an express or implied restriction upon the time of holding office, as that the officers shall be annually elected on a particular day, and that they shall hold from one charter election day till the next, or that they shall be elected for the year ensuing *only*, in such case they *cannot hold over* beyond the next election day or the end of the year. But when, by the constitution of the corporation, the officers are elected for a term, and until their successors are elected and qualified, or when they are elected 'for the year ensuing,' and the charter or organic law contains no restrictive clause, the officers *may continue to hold* and exercise their offices, after the expiration of the year, until they are superseded by the election of other persons in their places."—1 Dill. on Mun. Corp. section 220 (159).

In support of these views the author cites in addition to a number of English cases, decisions from the States of *Indi-*

*ana,* Connecticut, Kentucky, New York, Tennessee and *Illinois.*

The cases on the subject are fully reviewed in *Bethany* v. *Sperry,* 10 Conn. 200, and in *Stratton* v. *Outton,* 28 Cal. 44. In the former case the court says : "It is a well settled principle that an annual officer continues until superseded by the appointment of another in his place," and that this principle applies to officers of both public and private corporations unless there be some *restrictive* provisions in the statute creating them.

I have been unable to find any decision directly in conflict with the rule as above stated by Judge Dillon, but on the contrary I find the rule is fully sustained by the great weight of the authorities and it must, therefore, be regarded as the settled law.

Neither the statutes nor the ordinances in relation to the city of Wheeling have any restrictive words as to the terms of the office of collector, but on the contrary, I think the reasonable construction of the ordinances of the city referred to in the declaraction continues the term of the incumbent until his successor is elected and qualified. But having decided that said officer held over under the general law it is unnecessary to consider said ordinances further than to state that they neither by express words nor by implication restrict the powers of the city collector to hold over after the expiration of the term of two years. I am, therefore, of opinion that the defendant Black continued legally in office until September 14, 1875, and that the declaration properly so averred.

It follows necessarily that Black, being thus collector *de jure* of the city until his successor was elected and qualified, his sureties are bound to the same extent for his default while thus in office after the end of the two years from the date of the election of his predecessor that they are for his default during said two years.—*State* v. *Wells,* 8 Nev. 105; *People* v. *Aikenhead,* 5 Cal. 106; Brandt on Sur. and Guar. §§ 458-59.

It is also objected, that one of the defaults alleged is the failure of Black to "pay into the treasury of said city, at the time or times which were prescribed by the council of said city, all taxes," &c., when in fact the office of treasurer

had been abolished by statute. I do not think this objection can be serious. It certainly does not follow that the abolition of the office of treasurer necessarily destroys the treasury of the city. The mere name is of no consequence, there was always some officer or depository to receive the funds of the city.

It is also objected, that this assignment does not aver when the taxes for 1874 were levied, or that any time or times were prescribed for their payment, or who was entitled to receive the same. If there were any force in these objections they could not be taken advantage of on demurrer for the reason that, if any one of the acts complained of would constitute a breach of the bond, the demurrer to the assignment generally would have to be overruled.—*Henderson* v. *Stinger*, 6 Grat. 130.

Having noticed, as I think, all the objections made to the general assignment of breaches and finding none of them well taken, it follows that the demurrer to said assignment as well as the general demurrer to the dealaration was properly overruled.

The special assignments of breaches, being merely, as we have seen, in the nature of a bill of particulars to give a more definite notice to the defendants of the character of the plaintiff's claim than can generally be given in the general assignment, no such special assignment can be held bad on demurrer if it contains any single averment constituting a breach of the condition of the bond, although it may contain other matters which are irrelevant or which do not constitute such breach. The proper mode of reaching such irrelevant matter is to move to have it stricken out or to object to the introduction of evidence offered to prove it. A demurrer to the whole assignment, even if it assigns such irrelevant matter as cause therefor, must be overruled if it avers other matter constituting a breach of the condition of the bond.— *Wright* v. *Michie*, 6 Grat. 354.

This general rule disposes of the several demurrers to the special assignments of breaches contained in the declaration, and each of said demurrers was properly overruled, because the objections made in each instance relate to only part of the matters alleged as breaches and not to the whole of any

of said assignments. The matters, however, so objected to, so far as they are properly saved by objections to evidence or instructions prayed and refused, will be hereafter considered.

A subpœna *duces tecum* was awarded by the court requiring the defendant Black to produce a certain "cash book" kept by him in his office. The plaintiff founded its application for this subpœna on the affidavit of members of a committee of the city council which had investigated the conduct and accounts of Black as collector of the city. It is insisted that said affidavit was insufficient, because it was not made by a party to the action as required by the statute. Section 43, chapter 160, Acts 1882.

The plaintiff being a corporation could only act by its officers and agents. The affidavit, having been made in this case by members of the city council who had peculiar means of knowing the importance of said cash book as evidence for the plaintiff, was within the spirit if not within the very letter of the statute, and was sufficient. *Trenton Bank* v. *Haverstick*, 11 N. J. 171.

It is assigned as error that the court overruled the motion of the defendants for a change of venue. The record shows that this action was tried in September, 1883, and that the affidavits filed in support of this motion were made, some of them between December, 1879, and February, 1880, and others in November, 1882, and none of them after the latter date. These affidavits are made for the most part by residents of the city of Wheeling, and state that on account of the actions of Black as collector of the city there has been considerable prejudice among the people against him, and from their knowledge of the hostility and ill-feeling towards him, the affiants believe that such a state of public sentiment has resulted that a fair and impartial jury could not be obtained for the trial of this action in said city. In opposition to this motion the plaintiff filed the affidavits of a large number of residents, both of the city and of the county outside of the city, showing that in the opinion of the affiants a jury from the country districts of the county could be obtained not only without prejudice but without knowledge of the matters in controversy in this action. The court did summon a jury from the districts of the county outside of the city, and the

case was tried by that jury. I have not stated the full purport of all the affidavits filed in support of and in opposition to said motion, but I have carefully read and considered the whole of them, and I am satisfied that they do not make such a plain case in favor of the motion as would justify this Court in reversing the action of the circuit court. *Railroad* v. *Applegate*, 21 W. Va. 172; *State* v. *Greer*, 22 *Id.* 800.

An application for a change of venue should be made at the earliest opportunity. *Railway Company* v. *Mitchell*, 74 Ill. 394; *Dean* v. *White*, 5 Iowa 266; *Cook* v. *Garza*, 9 Tex. 358. In this case the defendants permitted four terms to pass after the issues were made up before they made their motion. Under the circumstances this was too late.

The preliminary motions and objections to the pleadings were passed upon and determined by one of the judges of the circuit court of Ohio county, but the action was ultimately tried by a judge of another circuit. It was admitted that both of the judges of the circuit court of Ohio county were citizens and tax-payers of the city of Wheeling. The defendants objected to either of said last named judges passing upon any matter in the case on the ground that they were interested in the result as such citizens and tax-payers. This objection was overruled and that is now asssigned as error. Our statute provides:

"No judge of any court, and no sheriff or other officer of a court, shall be disqualified from performing his official duties with respect to any cause by reason of the fact that he is a citizen and tax-payer of a county, district, school district, or municipal corporation which is interested in, or a party to such cause."—Section 1 chapter 62, Acts 1881.

That the legislature had the right to enact this statute is well settled—*The Mayor* v. *Long*, 31 Mo. 369; *City Council* v. *Pepper*, 1 Rich. L. 364; 1 Dill. on Mun. Corp. section 431 (360); Cooley on Const. Lim. 412.

The defendants excepted to the admission of the bond sued on in evidence because the name of one of the obligors who signed it was interlined in the body of it. There is nothing in this objection. The obligor was bound by the bond whether his name appeared in the body of it or not. If, therefore, it had been shown that the interlination had been made after

he had signed it and without his knowledge, it would have been held to be an immaterial alteration and disregarded.— *Supervisors* v. *Dunn*, 27 Grat. 608.

The defendants moved the court to exclude an ordinance of the city offered in evidence on the ground that the pleadings did not notice an amendment thereto.   It is a sufficient reply to this point to refer to the fact, that this action was brought in the municipal court of Wheeling and that said court must take judicial notice of the ordinances of the city whether they are pleaded or not.—1 Dill. on Mun. Corp. section 413 (346).   But the ordinance of which this amendment was a part, having been pleaded, the amendment itself was sufficiently pleaded, because it was part and parcel of the ordinance pleaded.

The objections to the admission in evidence of the minutes of the proceedings of the city council and of the "cash-book" kept in the office of the defendant Black, were properly overruled.—*Cowley* v. *The People*, 95 Ill. 262; *Baker* v. *Preston*, Gilmer 235; *Brandt* on Surety and Guar., section 519; *Supervisors* v. *Dunn*, 27 Grat. 608.

The plaintiff's bill of particulars contains an item of $2,000.00 as the "amount collected by Black from tax-payers as *interest* on taxes and *water-rents.*"   The defendants moved to exclude evidence offered to prove this item.   It is now insisted that the interest column of the cash-book, being as alleged the only evidence offered to support this item, should have been excluded, because it did not appear therefrom that the interest charged therein was collected on taxes upon which Black had the legal right to collect them.   I am not satisfied that this question is here properly presented by the record, but, as it arises in another form in the record, it may as well be considered now. · The position of the defendants is, as I understand it, that, if the defendant Black collected *interest* from tax-payers of the city on taxes (such as water-rents and school taxes) which the law and ordinances of the city did not authorize him to collect, he is not liable to the city for such interest, and even if he is liable his sureties are not.

The forty-second section of the charter of the city (Acts of 1836) provides that all taxes assessed on real estate for the benefit of the city shall bear interest at ten *per cent. per annum*

until paid. It, therefore, appears that Black was by law authorized to collect interest on a part of said taxes, and in the absence of any evidence to the contrary, the legal presumption is, that the interest collected by him and charged in the interest column of said " cash book," was such interest as he was by law authorized to collect. If such was not the fact Black knew it, and could easily have shown it by his testimony. But he declined to testify.

" In an action upon the official bond of a county treasurer for taxes unaccounted for, the fact of the illegality of the assessment and collection of said taxes is no defence."—*Mahaska* v. *Ingalls*, 14 Iowa 170.

The treasurer of a town and his sureties were held liable for taxes which had been collected by him, though such taxes had been improperly assessed and collected. *Bullwinkle* v. *Guttenberg*, 17 Wis. 601.

Taxes collected from tax-payers by a collector of a town cannot be retained by him on the ground that said taxes were not legal. *Evans* v. *Trenton*, 4 Zabr. 764; *Thompson* v. *Stickney*, 6 Ala. 579; *Walters* v. *State*, 1 Gill 302.

In *Lucas* v. *Locke*, 11 W. Va. 81, 91, this Court said: " To hold a deputy and his sureties liable to the sheriff on his bond, it is not necessary that the deputy is acting under color of some writ, but if he is acting under color of his office, and professing so to act and inducing others interested to believe he is acting *colore officii*, he and his sureties will be bound for such acts."

It is not pretended in the present case, that the interest on the taxes in question was not collected by Black under color or pretense of his office, but simply that it was collected without authority of law. It was by virtue of his office that he induced the tax-payers to pay it, and it seems to me, it would be a reproach to the law to permit him to retain this interest against the demand of the city. He made the collection as the officer and agent of the city. He is, therefore, estopped from denying that his act was legal, and he is in no position to raise the question whether the whole amount of interest collected by him was legally collected or not. Brandt on Surety and Guar. 452.

The defendants moved to exclude the evidence of the

cashier of the Exchange Bank in relation to the balance to the credit of Black in that bank on December 17, 1874. This motion was overruled and defendants claim this was error. The object of this evidence was to charge Black for interest received by him and not accounted for, on the money of the city deposited by him in said bank. There can be no doubt but that he was liable for such interest.—Brandt on Surety and Guar., section 455. It seems, however, that the defendant's objection is rested mainly on the fact that the cashier of the bank did not in his evidence distinguish between the interest paid to Black on account of the city's funds and on his own funds. The interest account upon these two funds seems not to have been kept distinct and they were, consequently, undistinguishable. If this were so the confusion resulted from the act of Black and the explanation of what interest he received from the public money and what on his private funds, rested upon him. It was enough for the city to show that it was entitled to at least a part of said interest and in the absence of any explanation as to what part, it was for the jury to find to what extent he was liable.

But it is asserted that the claims of the plaintiff are inconsistent in regard to the interest. That if he is chargable for the interest which he collected or ought to have collected, from the tax-payers, he cannot also be made liable for the specific interest received by him on the proceeds of taxes from the bank. Of course, if he had accounted for all the interest due on the taxes, he would not also be liable for the specific interest received by him from deposits of the public funds in the bank. But he was liable for the whole interest in the one form or the other and, if he was being charged with and compelled to pay more than what was properly due to the city, the explanation and evidence of that fact should come from him. If he had accounted for or been charged with more interest than he was liable for, he could readily have shown that fact and thus repelled the *primæ facie* case made against him by the city in charging him in the two modes of which he now complains.

I believe I have now noticed all the objections to evidence fairly arising in the record and which it is deemed material to notice specifically.

After all the evidence had been introduced, the whole of which was adduced by the plaintiff, and none by the defendants, the court on the motion of the defendants, gave to the jury three instructions and refused to give nine other instructions prayed for by the defendants. Those thus refused are numbered from four to twelve inclusive. That the fourth, sixth, eighth, tenth and twelfth of said instructions were properly rejected, sufficiently appears from what has been decided in the preceding part of this opinion. The others of said rejected instructions are as follows:

5. "The burden of proof is on the plaintiff to show the failure of Black to pay to the city or for its benefit any sums of money which Black may have received from the Exchange Bank by way of interest on money deposited in such bank, and in the absence of any such evidence, no recovery can be had in this action by reason of the receipt by Black of any such sums."

7. "With reference to all acts of a public officer, such as the collector of the city of Wheeling, the presumption, in the absence of proof to the contrary, is that such officer has done all things which the law or the course of business in his office made it proper that he should do. This presumption obtains as well with reference to the payment by him to the persons to whom he should have paid it of any balance which his accounts may have shown to have been in his hands as it does to any other of his acts."

9. "If the jury believe from the evidence that in August or July, 1875, there was a settlement between the city of Wheeling and George Q. Black with reference to the amounts with which he was chargable, and which he disbursed as collector of the city of Wheeling for the term of office mentioned in the bond sued on in this action, then such settlement is binding upon the parties unless set aside because of fraud or gross mistake or imposition. The burden of proving such fraud, gross mistake or imposition is upon the plaintiff in the action. If there was omitted from the settlement an item or items which should have entered into it, it is not sufficient for the plaintiff to show the mere fact of such omission. In order successfully to attack the settlement on that ground, the plaintiff must also show that such item or

items were fraudulently procured to be omitted, or that they were omitted unintentionally and through mistake, and in the absence of any evidence of the circumstances attending the settlement, the jury cannot infer the existence of such fraud or mistake."

11. "The burden of proof is on the plaintiff to show the breach of the condition of the bond sued on. Before, therefore, the plaintiff can recover by reason of the collection by Black of any sum from the tax-payers as interest on taxes collected, the plaintiff must also prove the failure of Black to account for or pay to the city or for its benefit such sums of interest, and if the jury believe that no sufficient evidence of such failure has been introduced, the plaintiff cannot recover anything by reason of the collection by Black of such interest.

The fifth and eleventh of these instructions assume that Black may have received interest from the tax-payers in the one case, and from the bank in the other, and that it was his duty to pay it to the city, but they place the burden upon the city to prove that he had not accounted for or paid over said interest. In *Pate* v. *Spotts*, 6 Munf. 394, an action of debt on a bond with collateral condition for the making of a deed, the plea, like that in the present action, was conditions performed, it was held that proof of a demand for the deed by the plaintiff was not necessary. By the terms of the bond the performance of the condition is required to make the bond void. The defendants by their plea assumed the burden of showing such performance. This would seem to be the logical conclusion both from the condition and the plea.

It is claimed, however, by the defendants, that their plea was simply a traverse of that part of the declaration which averred the non-performance of the condition and that because the declaration would have been bad if it had not made such averment the burden was on the plaintiff to prove the non-performance which he affirmed. While it is asserted that, except *Nicholas* v. *Fletcher*, 1 Wash. 330, the books fail to show any suggestion that in such case the burden is not on the plaintiff, no authority is furnished to show that the burden is on the plaintiff. The fact that such averment is necessary in the declaration, adds nothing to the argument. The

same might be said with equal force in regard to a declaration on a single bill or promissory note, and yet it would not be claimed that in such case the averment of non-payment would relieve the defendant of the burden of proving payment.—*Douglass* v. *Central Land Campany*, 12 W. Va. 502.

But, even if this view could be questioned, both of said instructions were properly refused, because they each assume that there was no evidence tending to prove Black's failure to pay. In the fifth the words used are, " in the absence of any such evidence," that is, in the absence of any evidence that he failed to pay over said interest, although it had been proven that he had received it for the use of the city. The jury had the right to infer from all the evidence in the case that he had failed to pay over said interest although there may have been no direct evidence to that effect. There was evidence from which the jury could properly find that there had been a forfeiture of the bond. It would, therefore, have been error to have told them that it was necessary by direct evidence to prove each specific act constituting the breaches.

The eleventh uses the words, " if the jury believe that no *sufficient* evidence of such failure has been introduced." This is objectionable for the further reason that it invades the province of the jury and tends to mislead them. The sufficiency or insufficiency of the evidence is purely a matter for the jury, and when the court tells them that the evidence must be sufficient, the inference is that it must be such as the court would regard as sufficient; for unless it means this, the instruction amounts to nothing, and the refusal of it would not prejudice the defendant. If it simply means that the jury are to be the judges of the evidence and they can find for the plaintiff, on whatever they may deem sufficient evidence, then the words used mean only that the jury are the judges of the evidence and amounts to no instruction at all. Such instructions as these are not allowed in this State *State v. Thompson*, 21 W. Va. 741; *State* v. *Heaton*, 23 W. Va. 793.

The seventh instruction is amenable to both the objections we have just been considering. Under the special facts disclosed by the record it places the burden of proof where it does not belong and it assumes that there was no *proof*, that

Black failed in any respect to do what was required of him, when there is evidence tending to prove such failure. The use of the word "*proof*" is objectionable in itself, because there may have been evidence tending to prove the fact although there was no positive direct proof on the subject.

The ninth instruction like the others, except in a more objectionable form, uses the words "in the absence of any evidence of the circumstances attending the settlement, the jury cannot infer the existence of such fraud or mistake." There may have been evidence other than of the circumstances, &c., from which the jury might have found such fraud or mistake. It was improper to separate one part of the case from other parts and then tell the jury what they may or may not infer from such part.—*Storrs* v. *Feick*, 24 W. Va. 606; *Washington* v. *B. & O. R. R. Co.*, 17 *Id.* 215.

But aside from this view this instruction was properly rejected, there was proof in the record tending to show that the omission referred to in the settlement mentioned was not the result of compromise or a release in favor of Black, but a settlement based on his statement of his accounts which failed to give facts which it was his duty to disclose. These facts having been shown the burden was on him and not on the plaintiff to satisfy the jury that such settlement was of a character which concluded the plaintiff against the items sought to be now recovered.

The following instruction which the court gave the jury at the instance of the defendants was all they were entitled to from the evidence in this case:

" If the jury believe that in July or August, 1875, George Q. Black rendered an account to the city of Wheeling of his collections and disbursements as collector for the unexpired term mentioned in the bond sued on, and that such account was approved by the said city, then the burden of proof is on the plaintiff to show errors in the account so approved. *Prima facie* such account is to be taken as correct."

I am of opinion, therefore, after the most careful and laborious consideration, that there is no error in the judgment of the circuit court, and that the same must be affirmed.

AFFIRMED.